Jon B. Fougner (State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

Anthony I. Paronich
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone:  (508) 221-1510
Facsimile:  (617) 830-0327

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DR. TIMOTHY COLLINS and SIDNEY NAIMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOTAL MERCHANT SERVICES, INC., QUALITY MERCHANT SERVICES, INC. MICHAEL ALIMENTO and BOBBY POWERS<br><br>Defendants. | Case No. 4:17-cv-03806-CW<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**Class Action**<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed:  July 5, 2017 |

Plaintiffs Sidney Naiman and Dr. Timothy Collins (collectively referred to as "Plaintiffs"), by their undersigned counsel, for this class action complaint against Total Merchant Services, Inc., and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Total Merchant Services") Quality

Merchant Services, Inc. and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Quality Merchant"), Quality's owner and employee who operated its telemarketing campaign, Michael Alimento ("Mr. Alimento") and Bobby Powers the "territory owner" at Total Merchant Services who conducted the facsimile advertisement campaign (collectively referred to as the "Defendants"), and allege as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>.  Plaintiffs, individually and as class representative for all others similarly situated, bring this action against the Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## II.    PARTIES

2.    Plaintiff Sidney Naiman is an individual residing in California, in this District.

3.    Plaintiff Dr. Timothy Collins is an individual residing in California.

4.    Defendant Total Merchant Services, Inc. is a Delaware corporation with its principal place of business in Woodland Hills, California. Total Merchant Services is registered to do and is doing business in California and throughout the United States.

5.    Defendant Quality Merchant Services, Inc. is an Illinois corporation with its principal place of business in Bartlett, IL. Quality Merchant Services does business throughout the United States, including into California.

6.    Defendant Michael Alimento is an individual residing in Illinois, and is the owner and Vice President of Quality Merchant Services, Inc. Mr. Alimento operates the telemarketing campaign for Quality Merchant.

7.    Defendant Bobby Powers is an individual residing in Hawaii who identifies himself as a "Territory Owner" for Total Merchant Services. Mr. Powers operates the facsimile advertisement campaign for Total Merchant that is the subject of this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### III.   JURISDICTION AND VENUE

8.   <u>Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically, 47 U.S.C. § 227.

9.   <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Total Merchant Services because it has submitted to California jurisdiction by registering with the Secretary of State to do business in this State, and a substantial part of the wrongful acts alleged in this Complaint were committed in California. This Court has personal jurisdiction over the remaining defendants because they intentionally directed their conduct into California, and they committed a substantial part of the wrongful acts alleged in this Complaint in California.

10. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff Naiman's claims occurred in this District.

11. <u>Intradistrict Assignment</u>. Assignment to this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff Naiman's claims occurred in the County of Contra Costa.

### IV.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

<u>Automated Calls to Cellular Telephones</u>

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A).  The TCPA

provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

§ 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012) (footnotes omitted).

17. The FCC regulations also "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 ¶ 1 (2013).

The Transmission of Facsimile Advertisements

19. The TCPA was also enacted to protect the property rights of the recipients of unsolicited facsimile advertisements.

20. The TCPA prohibits the use of a facsimile machine to send unsolicited advertisements for goods and services.  47 U.S.C. § 227(b)(1)(C).

21. The TCPA requires that even facsimile advertisements being sent to companies who consented to receipt, or with whom the advertiser has an established business relationship, must include language on the facsimile that clearly informs the recipient that it may request that future facsimiles cease, and that failure to remove the consumer's facsimile from the telemarketer's database within thirty days is itself a violation of the TCPA.  These requirements are referred to as "Compliant Opt Out Notice."

The TCPA Imposes Personal Liability on Individuals who Participate in or Commission the TCPA Violations

22. Under the TCPA, an individual such as Mr. Alimento, may be personally liable for the acts alleged in this Complaint pursuant to  47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47. U.S.C. § 217.

23. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

24. Defendant Mr. Alimento is personally liable under the "participation theory" of liability because he was the controlling officer of Quality Merchant, knew of Quality Merchant's pre-recorded telemarketing conduct, and directed employees and/or agents of Quality Merchant to continue making those violations.

25. In fact, Mr. Alimento was the only third party identified by Total Merchant in its initial disclosures relating to the pre-recorded telemarketing call alleged by Plaintiff Naiman.

26. This is because defendant Mr. Alimento authorized and oversaw Quality Merchant's telemarketing processes.

27. Furthermore, Mr. Alimento responded to a subpoena in his individual capacity in this matter and produced information relating to his knowledge of the pre-recorded telemarketing call the Plaintiff alleges.

28. Finally, Mr. Alimento is also personally liable because he was responsible for ensuring compliance with Quality Merchant and their vendors, including TCPA compliance.

29. Defendant Mr. Powers is personally liable under the "participation theory" of liability for the facsimile advertisement campaign, because he personally conducted the campaign and transmitted the facsimile advertisements himself or through an electronic service that allowed for transmission *en masse*.

30. In fact, Mr. Powers was the only third party identified by Total Merchant in its initial disclosures relating to the facsimile advertisement campaign alleged by Plaintiff Dr. Collins.

31. This is because defendant Mr. Powers authorized and oversaw the facsimile advertisement campaign.

## V.    FACTUAL ALLEGATIONS

### A.    Factual Allegations Regarding Total Merchant Services

32. Total Merchant Services offers various payment technologies for businesses. *See* http://totalmerchantservices.com (last visited June 23, 2017).

33. Total Merchant Services "is a registered ISO/MSP of Wells Fargo Bank, N.A," i.e., an Independent Selling Organization / Member Service Provider of Wells Fargo Bank.  *Id.*

34. One of Total Merchant Services' strategies for marketing its payment services involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

35. Total Merchant Services uses ATDS equipment that has the capacity to store or produce telephone numbers to be called, that includes autodialers and predictive dialers, and that plays a prerecorded message once the calls connect.

36. Recipients of these calls, including Plaintiff Naiman, did not consent to receive such telephone calls.

37. Total Merchant Services also make calls using an ATDS to cellular telephones whose owners, including Plaintiff Naiman, have not provided prior express written consent to receive such calls.

38. Another one of Total Merchant Services' strategies for marketing its payment services involves the use of sending facsimile advertisements to solicit business.

39. Recipients of these faxes, including Plaintiff Dr. Collins, did not consent to receive them.

40. Total Merchant Services also sends faxes, such as the ones received by Dr. Collins, that do not have appropriate "opt-out" notices.

**B.      Factual Allegations Regarding Plaintiff Dr. Collins**

41. Plaintiff Dr. Collins is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

42. On July 5, 2017 the Plaintiff Dr. Collins received a facsimile advertisement Bobby Powers.

43. The facsimile advertisement contained direct contact information for "Bobby Powers".

44. According to his LinkedIn profile, Bobby Powers has been a sales representative at Total Merchant Services for 17 years. *See* https://www.linkedin.com/in/bobby-powers-90834315/ (Last Visited August 17, 2017).

45. Mr. Powers also identifies himself on his Facebook page as a "Territory Owner" at Total Merchant Services.

46. The Plaintiff Dr. Collins received similar faxes on July 12, 2017 and August 8, 2017.

47. All of the facsimile advertisements Dr. Collins is aware he received are attached as Exhibit 1.

48. The facsimile advertisements were generic and a number state "ATTENTION MERCHANTS".

49. In fact, one of the facsimile advertisements had a place for the recipient to place their business card, confirming that the goal of the transmission was to generate new business.

50. None of the facsimile advertisements contain a compliant opt-out notice.

51. Plaintiff Dr. Collins has never been a customer of Total Merchant Services, nor has he ever been interested in being a customer of Total Merchant Services.

52. Plaintiff Dr. Collins did not provide consent to receive facsimile advertisements from, or on behalf of, Total Merchant Services.

53. Plaintiff Dr. Collins's privacy has been violated by the above-described call from, or on behalf of, Total Merchant Services. The faxes are an annoying, harassing nuisance.

54. Plaintiff Dr. Collins and all members of the Facsimile Advertisement Class, defined below, have been harmed by the acts of Total Merchant Services because their privacy has been violated and they were subjected to annoying and harassing faxes that constituted a nuisance. The calls also occupied Plaintiff Dr. Collins's facsimile line, rendering it unavailable for legitimate communication.

**C.    Factual Allegations Regarding Plaintiff Naiman**

55. Plaintiff Naiman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

56. Plaintiff Naiman's telephone number, (925) 935-XXXX, is registered to a cellular telephone service.

57. On June 16, 2017, the Plaintiff Naiman's telephone number was called with a pre-recorded message by Quality Merchant, at the direction of Michael Aliment, acting on behalf of Total Merchant Services.

58. The caller ID showed the telephone call was from (630) 246-4315.

59. When the call was answered, there was a lengthy pause and a click followed by silence before any voice came on the line, which indicated that the call was made using an ATDS.

60. Following the lengthy pause and extended silence, a prerecorded message played words to the effect that the call was being made to sell credit card processing services. The called party was instructed to press a button on his telephone for further information.

61. In an attempt to determine the identity of the caller, the recipient pressed the button for further information and was instructed by another prerecorded voice to leave a voice message with a telephone number.

62. Shortly after leaving his voice message, the Plaintiff Naiman received a call from "Perla", who gave her telephone number as (847) 469-1081, claimed she was with Total Merchant Services and proceeded to try to sell Total Merchant Services products.

63. After the phone call, Total Merchant Services sent Plaintiff Naiman a series of e-mails attempting to sell its products.

64. Plaintiff Naiman has never been a customer of Total Merchant Services, nor has he ever been interested in being a customer of Total Merchant Services.

65. Plaintiff Naiman did not provide prior express written consent to receive ATDS-generated or prerecorded calls from, or on behalf of, Total Merchant Services.

66. Plaintiff Naiman's privacy has been violated by the above-described call from, or on behalf of, Total Merchant Services. The call was an annoying, harassing nuisance.

67. Plaintiff Naiman and all members of the Cellular Telephone Class, defined below, have been harmed by the acts of Total Merchant Services because their privacy has been violated, they were subjected to annoying and harassing calls that constituted a nuisance, and they were charged for incoming calls.  The calls also occupied Plaintiff Naiman's cellular telephone line, rendering it unavailable for legitimate communication.

**D.    Factual Allegations Regarding Additional Consumer Complaints**

68. Unfortunately, Plaintiffs' experiences with Total Merchant Services are not isolated events. Many others have lodged complaints after having received telemarketing calls from Total Merchant Services.

69. Total Merchant Services has previously been informed that it, or its agents, have been making pre-recorded calls to prospective customers' cellphones.

70. Despite this knowledge, Total Merchant Services continued its conduct.

71. In fact, at least one facsimile advertisement was sent after the filing of this lawsuit, so Total Merchant's conduct in violation of the TCPA is believed to continue.

72. With respect to the pre-recorded message calls, 800notes.com also details complaints regarding calls from another caller ID that robocalled Plaintiff Naiman, (828) 548-6764:

> **DG**
> 30 Jul 2016
>
> Bottom feeding credit card merchant service.
>
> ....
>
> *Caller:  Telemarketer*
>
> **arrr_beee**
> 21 Dec 2016
>
> Pre recorded message. I did not listen. ....
>
> *Caller:  Telemarketer*

*630-246-4315*, 800Notes, http://800notes.com/Phone.aspx/1-630-246-4315 (last visited June 23, 2017).

## VI.    TOTAL MERCHANT'S LIABILITY AND ITS ARRANGEMENT WITH QUALITY MERCHANT

73. The Federal Communication Commission has instructed that sellers such as Total Merchant may not avoid liability by outsourcing telemarketing to third parties, such as Quality Merchant:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially

more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

74. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

75. In fact, for more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

76. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

77. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

78. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

79. Total Merchant is directly liable for the Quality Merchant-commissioned telemarketing calls because it actively participated in those calls through guidelines it directed Quality Merchant, and the third parties they worked with, to follow.

80. Total Merchant is also directly liable for the Quality Merchant-commissioned telemarketing calls because it actively participated in the calls by "allow[ing] the outside sales entity access to information and systems that normally would be within the seller's exclusive control", when it allowed Quality Merchant access to its telemarketing calling system because Quality Merchant or the third party it worked with, was able to automatically transfer the Plaintiff to a Total Merchant representative during the call, as all of the follow up about the sale came directly from Total Merchant.

81. Total Merchant knowingly and actively accepted this business, which originated through the illegal telemarketing calls from Quality Merchant commissioned telemarketing calls.

Indeed, Total Merchant employees marketed its products and services to Plaintiff on the call to the Plaintiff.

82. Total Merchant maintains interim control over Quality Merchant's actions as to telemarketing and other activities by directing the content of their agents' advertising as well as dictating the parameters for potential prospects that they would accept.

83. Total Merchant knew (or reasonably should have known) that Quality Merchant was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts "warm transfer" calls from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

84. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VII.   TOTAL MERCHANT'S LIABILITY FOR THE FACSIMILE ADVERTISING OF BOBBY POWERS

85. The TCPA prohibits the "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (2006).

86. The statute, however, is silent regarding who qualifies as a "sender" of junk faxes.

87. Recognizing this ambiguity, the FCC issued an order in 1995, clarifying that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 (1995).

88. This definition of "sender" was later codified in 2006 as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. 64.1200(f)(10).

89. Roughly a year after the 2013 FCC Ruling, the Eleventh Circuit requested the FCC's position on the principles governing a defendant's liability for fax ads sent by a third party.

90. In its response, the FCC clarified that "the DISH Network ruling applies only to liability for telemarketing calls and neither addresses nor alters the Commission's pre-existing regulatory treatment of unsolicited facsimile advertisements."

91. That standard, the letter explained, is embodied in the definition of "sender" as stated in the FCC's 1995 order: "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *Id.* (quoting 10 FCC Rcd. at 12407).

92. This means, according to the FCC, that "senders" of junk faxes are directly liable, and that principles of vicarious liability are irrelevant.

93. Here, from the plain face of the facsimile advertisements, Total Merchant goods and services were advertised on each communication.

94. However, even under the 2013 FCC Order, Total Merchant is still liable for the actions of its "Territory Owner" Bobby Powers:

a.     Because it actively participated in the facsimile advertisements through guidelines it directed Mr. Powers, and the third parties they worked with, to follow.

b.     Total Merchant knowingly and actively accepted this business, which originated through the illegal telemarketing calls from Mr. Powers facsimile advertisements.

c.     Total Merchant maintains interim control over Mr. Powers's actions as to telemarketing and other activities by directing the content of their agents' advertising as well as dictating the parameters for potential prospects that they would accept.

d.     Total Merchant knew (or reasonably should have known) that Mr. Powers was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts leads from facsimile advertisements would, and indeed must, investigate to ensure that those contacts were made in compliance with TCPA rules and regulations.

## VIII.     CLASS ACTION ALLEGATIONS

95. Class Definitions.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of national classes ("Classes") defined as follows:

CELLULAR TELEPHONE CLASS – PLAINTIFF NAIMAN

> All persons to whom:  (a) Defendants and/or a third party acting on Defendants' behalf made one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing this Complaint and ends at the date of trial.

FACSIMILE ADVERTISEMENT CLASS – PLAINTIFF DR. COLLINS

> All persons to whom: (a) Defendants and/or a third party acting on Defendants' behalf sent a facsimile advertisement; (b) promoting Defendants' goods or services; (c) at any time in the period that

begins four years before the date of filing this Complaint and ends at the date of trial.

Excluded from the Classes are Defendants, any entity in which Defendants has a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

96. <u>Numerosity</u>.  The Classes are so numerous that joinder of all members is impracticable.  On information and belief, the Classes have more than 100 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

97. <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendants and/or its affiliates or agents, and/or other persons or entities acting on its behalf, violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

b.      Whether Defendants and/or its affiliates or agents, and/or other persons or entities acting on its behalf, knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS and/or artificial or prerecorded voice, thus entitling Plaintiff and the Cellular Telephone Class to treble damages;

c.      Whether Defendants is liable for ATDS-generated and/or automated or prerecorded calls promoting its products or services made by its affiliates and agents and/or other persons or entities acting on its behalf; and

d.      Whether Defendants and/or its affiliates and agents and/or other persons or entities acting on its behalf sent facsimile advertisements without prior permission;

1          e.        Whether Defendants and/or its affiliates and agents and/or other persons or

2   entities acting on its behalf sent facsimile advertisements without a compliant opt-out notice;

3          f.        Whether Defendants and/or its affiliates and agents and/or other persons or

4   entities acting on its behalf should be enjoined from violating the TCPA in the future.

5          98. Typicality.  Plaintiffs' claims are typical of the claims of the respective Classes.

6   Plaintiffs' claims, like the claims of the Classes, arise out of the same common course of conduct

7   by Defendants and are based on the same legal and remedial theories.

8          99. Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Classes.

9   Plaintiffs have retained competent and capable attorneys with significant experience in complex

10  and class action litigation, including consumer class actions and TCPA class actions.  Plaintiffs

11  and their counsel are committed to prosecuting this action vigorously on behalf of the Classes

12  and have the financial resources to do so.  Neither Plaintiffs nor its counsel have interests that are

13  contrary to or that conflict with those of the proposed Classes.

14         100.   Predominance.  Defendants has engaged in a common course of conduct toward

15  Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect

16  Plaintiffs and members of the Classes predominate over any individual issues.  Adjudication of

17  these common issues in a single action has important and desirable advantages, including judicial

18  economy.

19         101.   Superiority.  A class action is the superior method for the fair and efficient

20  adjudication of this controversy.  Classwide relief is essential to compel Defendants to comply

21  with the TCPA.  The interest of individual members of the Classes in individually controlling the

22  prosecution of separate claims against Defendants is small because the damages in an individual

23  action for violation of the TCPA are small.  Management of these claims is likely to present

24  significantly fewer difficulties than are presented in many class actions because the calls at issue

25  are automated and because the TCPA articulates bright-line standards for liability and damages.

26  Class treatment is superior to multiple individual suits or piecemeal litigation because it

27  conserves judicial resources, promotes consistency and efficiency of adjudication, provides a

forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

102.    <u>Injunctive and Declaratory Relief is Appropriate</u>.  Defendants has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

## IX.    FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

103.    Plaintiff Naiman realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104.    The foregoing acts and omissions of Defendants and/or its affiliates or agents, and/or other persons or entities acting on its behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff Naiman and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice.

105.    As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants and/or its affiliates or agents and/or other persons or entities acting on its behalf, Plaintiff Naiman and members of the Cellular Telephone Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

106.    Plaintiff Naiman and members of the Cellular Telephone Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## X.   SECOND CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

107.     Plaintiff Naiman realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

108.     The foregoing acts and omissions of Defendants and/or its affiliates or  agents, and/or other persons or entities acting on its behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff Naiman and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice.

109.     As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants and/or its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff Naiman and members of the Cellular Telephone Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## XI.   THIRD CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

110.     Plaintiff Dr. Collins realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

111.     The foregoing acts and omissions of Defendants and/or its affiliates or  agents, and/or other persons or entities acting on its behalf, constitute numerous and multiple violations of the TCPA, by transmitting facsimile advertisements without prior permission, and, independent of that, by the fact that the facsimile advertisements did not contain a complaint "opt out" notice.

112.     As a result of violations of the TCPA by Defendants and/or its affiliates or agents and/or other persons or entities acting on its behalf, Plaintiff Dr. Collins and members of the

1    Facsimile Advertisement Class are entitled to an award of $500 in damages for each and every

2    facsimile advertisement sent.

3         113.    Plaintiff Dr. Collins and members of the Facsimile Advertisement Class are also

4    entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or

5    other persons or entities acting on its behalf from violating the TCPA by sending facsimile

6    advertisements in the future.

7              **XII.    FOURTH CLAIM FOR RELIEF**
      **(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C.**
8                                 **§ 227(b)(1)(A))**

9         114.    Plaintiff Dr. Collins realleges and incorporates by reference each and every

10   allegation set forth in the preceding paragraphs.

11        115.    The foregoing acts and omissions of Defendants and/or its affiliates or  agents,

12   and/or other persons or entities acting on its behalf, constitute numerous and multiple violations

13   of the TCPA, by transmitting facsimile advertisements without prior permission, and,

14   independent of that, by the fact that the facsimile advertisements did not contain a complaint "opt

15   out" notice.

16        116.    As a result of willful or knowing violations of the TCPA by Defendants and/or its

17   affiliates or agents and/or other persons or entities acting on its behalf, Plaintiff Dr. Collins and

18   members of the Facsimile Advertisement Class are entitled to an award of $1,500 in damages for

19   each and every facsimile advertisement sent.

20        117.    Plaintiff Dr. Collins and members of the Facsimile Advertisement Class are also

21   entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or

22   other persons or entities acting on its behalf from violating the TCPA by sending facsimile

23   advertisements in the future.

24             **XIII.    PRAYER FOR RELIEF**

25        WHEREFORE, Plaintiffs, on their own behalf and on behalf of all members of the Class,

26   pray for judgment against Defendants as follows:

27

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiffs as representatives of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that actions complained of herein by Defendants and/or its affiliates, agents, or related entities violate the TCPA;

E.      An order enjoining Defendants and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiffs and the Classes of damages, as allowed by law;

G.      An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XIV.    DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

## XV.    SIGNATURE ATTESTATION

The ECF user filing this Complaint attests that concurrence in its filing has been obtained from each of the other signatories.

1    RESPECTFULLY SUBMITTED AND DATED this 7th day of November, 2017.

2

3                                    By:    /s/ Anthony I. Paronich
                                            Anthony I. Paronich
4

5                              CERTIFICATE OF SERVICE

6        I, Anthony I. Paronich, hereby certify that on November 7, 2017, I electronically filed the

7    foregoing with the Clerk of the Court using the CM/ECF system which will send notification to

8    all counsel of record.

9                                    BRODERICK & PARONICH, P.C.

10                                   By: /s/ Anthony I. Paronich
11                                       Anthony I. Paronich, Admitted Pro Hac Vice
                                         Email:  anthony@broderick-law.com
12                                       99 High Street, Suite 304
                                         Boston, Massachusetts 02110
13                                       Telephone:  (617) 738-7080

14                                   Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27