# BRODERICK & PARONICH, P.C.

99 High St., Suite 304
Boston, Massachusetts 02110

Anthony I. Paronich

Tel. (508) 221-1510
Fax (617) 830-0327
anthony@broderick-law.com

June 11, 2018

*VIA ELECTRONIC FILING*

The Honorable Joseph C. Spero
Chief Magistrate Judge
San Francisco Courthouse, Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Naiman, et. al. v. Total Merchant Services, Inc.*, United States District Court for the Northern District of California, Civil Action No. 4:17-cv-3806

Dear Judge Spero:

The plaintiffs, Sidney Naiman and Dr. Timothy Collins ("Plaintiffs"), and the defendant, Total Merchant Services, Inc. ("Total Merchant") are submitting this letter ("Joint Discovery Letter") in accord with Magistrate Judge Spero's Civil Standing Order (Revised November 18, 2014) to detail their discovery dispute.

**A.   Conference Between the Parties**

Before the submission of this Joint Discovery Letter, the parties conferred in person in Chicago, Illinois on June 6, 2018 in good faith in an attempt to avoid judicial intervention. During that process, the parties were able to narrow the disputes that would have otherwise been submitted to this Court. However, judicial intervention is required on the remaining issue in dispute.

**B.   Discovery Request in Dispute**

**REQUEST FOR PRODUCTION NO. 29:** Please produce all DOCUMENTS relating to or comprising any payments made by YOU to any THIRD PARTY or VENDOR identified in YOUR answer to Interrogatory No. 4.[1]

**RESPONSE:** Subject to and without waiving the following objections, TMS did not identify "any THIRD PARTY or VENDOR" in response to Interrogatory No. 4 due to its

---

[1] Interrogatory No. 4 requested Total Merchant to "IDENTIFY all THIRD PARTIES or VENDORS whose work relates to telemarketing or the tracking or aggregation of data related to telemarketing, and DESCRIBE the services each such THIRD PARTY or VENDOR performs for YOU."

objectionable nature. Accordingly, TMS is not in possession of documents that may be responsive to this Request. The objections that apply to this Request continue as follows: TMS objects to this Request as argumentative to the extent the Request purports to assume certain facts or otherwise poses mere allegations as fact. TMS further objects to this Request as irrelevant, not proportional to the needs of this case, overbroad, and unduly burdensome as a result of the time period set forth in Instruction No. 2 as set forth more fully in the Paragraph F of the General Objections, supra, the definition of the term "THIRD PARTY" as set forth more fully in Paragraph D of the General Objections, supra, and the definition of the term "VENDOR" as set forth more fully in Paragraph E of the General Objections, supra. TMS further objects to the definition of the terms "YOU" and "YOUR" as set forth more fully in Paragraph C of the General Objections, supra.

### C. Plaintiff's Position

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). These prohibitions apply not only to sellers of goods and services that make calls directly, but also to the sellers' authorized marketing agents. FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *Rules and Regs. Implementing the Telephone Consumer Prot. Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). The FCC affirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Pet. filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

Total Merchant offers credit card processing services to businesses nationwide. Total Merchant generates new business through third-party partners that sign "Sales Representation Agreements" requiring them to market Total Merchant's goods and services. Quality and its owner Michael Alimento employed pre-recorded telemarketing messages without consent of the called parties to drive sales, in contravention of the TCPA. Quality has violated the TCPA for years and, even after the filing of this lawsuit, continued to use pre-recorded messages for Total Merchant's benefit and with its knowledge and assistance. In fact, despite prior complaints about this telemarketing, Total Merchant has given Quality multiple loans, including one that Quality used to purchase autodialing equipment and employ telemarketers to answer calls from that autodialing equipment.

Through this discovery request, the Plaintiffs are attempting to determine how much money one defendant (the putative principal, Total Merchant) paid the other defendant (the putative agent, Quality) for new business origination via automated telemarketing. A factor informing the agency and vicarious-liability analysis is "whether the work is in the regular business of the employer." *Jones v. Royal Admin. Servs.,* 887 F.3d 443, 450 (9th Cir. 2018). The

more of a putative principal's spending goes to a given vendor, the more that vendor's "work is in the regular business of the employer." Moreover, the due diligence that one party to a contract should reasonably do on another depends on the financial scale of the parties' contract. For example, citing the SEC, the United States District Court for the Northern District of California has held: "The participating underwriter's reasonable investigation may not be as heavy a burden as that of the managing underwriter." *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 301 (N.D. Cal. 1978). Similarly, it is no accident that, in the context of ratification, the Restatement uses the *expensive* example of a chandelier as an example of something that, upon inquiry notice, a reasonable buyer would investigate. Restatement (Third) of Agency § § 4.06 illus. 3.

Conducting more due diligence on one's primary vendors than on one's inconsequential vendors is common sense. Through this discovery request, the Plaintiff is attempting to learn the amount and percentage of total revenue from telemarketing Total Merchant realized from its vendor Quality. This information would aid an expert (or a jury) in analyzing the amount of effort Total Merchant should have given to investigating its vendor's compliance. Here Quality Merchant appears to have engage in pre-recorded telemarketing unchecked.

Total Merchant's objections should be overruled:
1. *First*, the objection that Total Merchant has not identified any vendors responsive to Interrogatory No. 4 can be disregarded, since the parties are aware of Quality Merchant, and its owner Michael Alimento, as a vendor of Total Merchant that was engaged in outbound telemarketing on Total Merchant's behalf.
2. *Second*, the objection that the request is argumentative by treating assumptions as facts is moot. Plaintiff understands that the "assumptions" are that Total Merchant paid Quality Merchant for telemarketing. Documents produced in this litigation leave no doubt that this is indeed a fact, as confirmed by the depositions taken on June 6, 2018 of Quality's principals.
3. *Third*, the request is proportional to the needs of the case when compared to its burden. The Plaintiffs are seeking a single electronic document (or a small set of documents that presumably would be co-located and similar to one another) identifying the payments to the co-defendant during the putative class period, broken down by year. The importance of this document, which identifies how much Quality was paid for illegal telemarketing by Total Merchant, far outweighs the burden of electronic retrieval from Total Merchant's accounting of this information—a burden that Total Merchant's discovery response does not identify.
4. *Fourth*, because this document informs the agency analysis, it is relevant even to the extent that it references facts predating the beginning of the class period or the statute-of-limitations period. Dealings between a putative principal and its putative agent inform the agency analysis of an injury caused by the putative agent even if the dealings occurred before the injury.
5. *Fifth*, Total Merchant's objections to the nomenclature "THIRD PARTY," "VENDOR" and "YOU" are moot because everyone is now on the same page about the entities at issue: Total Merchant and Quality. Indeed, the case is now all about Quality's telemarketing on Total Merchant's behalf.

Plaintiff's Final Compromise: Plaintiff offers to limit the request to the co-defendants Quality Merchant Services, Inc. and its owner Michael Alimento.

### D. Defendant's Position

Upon a motion to compel discovery responses, the moving party has the burden of demonstrating relevance. *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-cv-06637-RG-PSG, 2013 WL 1366041, at *1 (N.D. Cal. Apr. 3, 2013) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). Plaintiff's two (2) arguments do not support their attempt to obtain irrelevant financial information that is ordinarily reserved for post-judgment discovery. Plaintiff cannot meet their burden of demonstrating the relevance of Request for Production No. 29—a Request that seeks the **financial information** of Total Merchant **since July 5, 2009 through the present**—as neither of the two arguments is sufficient:

> Argument 1: "Plaintiffs are attempting to determine how much money one defendant (the putative principal, Total Merchant) paid the other defendant (the putative agent, Quality) for new business origination via automated telemarketing[;]" (the "First Argument") and Argument 2: "Plaintiff is attempting to learn the amount and percentage of total revenue from telemarketing Total Merchant realized from its vendor Quality" (the "Second Argument").

Section(C), *supra*, at pp. 3&4.

It is without dispute that Alimento signed a non-exclusive "Sales Representation Agreement" with Total Merchant that required Alimento to adhere to all applicable laws, rules, and regulations, including consumer protection laws, in his performance of the "Sales Representation Agreement." Indeed, this "Sales Representation Agreement" has been produced to Plaintiffs along with two (2) loan agreements between Total Merchant and Alimento's company, Quality, wherein Alimento and his company further agreed to adhere to all applicable laws, rules, and regulations, including consumer protection laws. Contrary to Plaintiff's unsupported position statement, Total Merchant did **not** advance any loans to Quality after learning of "prior complaints" concerning Quality's use of "pre-recorded telemarketing messages." Rather, discovery has thus far revealed the opposite (*i.e.,* Total Merchant rejected Quality's request for an additional loan following "prior complaints" concerning Quality's use of "pre-recorded telemarketing messages"). Additionally and counter to Plaintiff's unsupported position statement, the correct fact (*i.e.,* not the opinion or unsupported argument of counsel for Plaintiff) is that Quality was **not** compensated for telemarketing as reflected on the face of the "Sales Representation Agreement."

Nonetheless and in support of the First Argument, Plaintiffs cite to *Jones v. Royal Admin. Servs.* for the proposition that the financial information concerning the relationship between Total Merchant and Quality is related to the eighth factor analyzed in *Jones* – "whether the work is in the regular business of the employer." 887 F.3d 443, 450 (9th Cir. 2018). However, the

eighth factor analyzed in *Jones* was not concerned with financial information or the like, but rather the type of "business" of the putative principal (alleged to be Total Merchant) and the relation between such "business" and the services offered by the putative agent (alleged to be Quality). *Id.* at 452 ("Eighth, Royal specifically contracted out all its direct sales…instead of hiring its own employees to sell its VSCs. However, Royal is in the business of selling VSCs; accordingly, AAAP's sales are a regular part of Royal's business."). Indeed, the **only** factor analyzed in *Jones* that is even related to financial information and the like is the seventh factor— "whether payment is by time or by the job"—which analysis does not even seek the amount of payment. *Jones*, as cited by Plaintiffs, simply does not support Plaintiffs' request for financial information between Total Merchant and Quality.

Moreover, "district courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment…on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence." *Siearrapine v. Refiner Products Mfg., Inc.*, 275 F.R.D. 604, 609, E.D. Cal. 2011 (collecting cases). However, this is exactly the type of information Plaintiffs seek to obtain as revealed by their Second Argument that asserts an attempt to obtain such information pursuant to a "due diligence" inquiry. Indeed, to "learn the amount and percentage of total revenue from telemarketing Total Merchant realizes from its vendor Quality," Plaintiffs would need to know the amount of money attributable to the actions of Quality—a topic not sought by the Request at issue that seeks payments made by Total Merchant to Quality—and the amount of money attributable to the actions of any and every other vendor Total Merchant may use—again, a topic that is not sought by the Request at issue that seeks payments made by Total Merchant to Quality —so that the "percentage" could then attempt to be calculated. Such information (beyond not being properly requested) is not relevant to any analysis in this action, including an agency analysis.

Only one (1) response to the forty-four (44) individual requests for production propounded by Plaintiffs on Total Merchant is before the Court, and it is because of Plaintiffs' premature attempt to obtain financial discovery from Total Merchant. For the reasons contained herein, Total Merchant's objections should be sustained as Request for Production No. 29 seeks irrelevant and overbroad (in time) information.

Total Merchant's Final Compromise: Total Merchant will provide Plaintiff, and indeed is in the process of compiling for Plaintiff, information reflecting the identities of merchants identified to Total Merchant by Quality.

    Submitted Jointly,

    Plaintiffs,

    */s/ Anthony I. Paronich*

    Total Merchant Services, Inc.,

6

*/s/ Lawren A. Zann*

35170360v2