UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

DR. TIMOTHY COLLINS and SIDNEY NAIMAN, individually and on behalf of all others similarly situated,

               Plaintiffs,

    v.

TOTAL MERCHANT SERVICES, INC., QUALITY MERCHANT SERVICES, INC. MICHAEL ALIMENTO and BOBBY POWERS

               Defendants.

Case No. 4:17-cv-03806-CW

**EXPERT REPORT OF ANYA VERKHOVSKAYA**

## **EXPERT REPORT OF ANYA VERKHOVSKAYA**

### **INTRODUCTION AND SUMMARY OF OPINIONS**

1. Plaintiffs' counsel asked me to analyze call records produced in the above-captioned litigation (the "Action"). I understand that, inter alia, Plaintiffs allege that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by initiating autodialed telephone solicitations using prerecorded voices to wireless telephone numbers. Plaintiffs' counsel asked me to identify wireless telephone numbers to which one or more calls were made and to provide information relating to timeframes certain calls were initiated.

2. All of the work accomplished in connection with this Expert Report was performed by me and/or at my direction and with my supervision.

3. In my opinion, the calling records produced in the litigation show 235,278 calls were initiated to 50,417 unique telephone numbers assigned to wireless telephones at the time of the calls.

4. In my opinion, the calling records produced in the litigation show 184,723 calls were initiated to 42,701 unique wireless telephone numbers on or after December 1, 2016.

5. In my opinion, the calling records produced in the litigation show 138,110 calls were initiated to 31,328 unique wireless telephone numbers on or after February 27, 2017.

## EXPERIENCE AND QUALIFICATIONS

6.     I am the President of Class Experts Group, LLC. Class Experts Group, LLC is a provider of litigation support services with a primary focus on data management and data analysis. The matters stated herein are based upon my personal knowledge or matters known or reasonably available to me.

7.     I have regularly overseen and directed the analysis of call records and other data sets in my professional experience. A copy of my resume is attached to this report as Exhibit A.

8.     Plaintiff has retained me at an hourly rate of $525 an hour.

9.     In cases brought under the TCPA, I routinely analyze call records to identify class members. As part of this analysis, I partner with established and reputable data vendors, such as LexisNexis, Experian, Nexxa Group, Inc. ("Nexxa"), Microbilt Corporation, TransUnion, and others (collectively, "Data Processors"). I have long-standing relationships and prior experience with the Data Processors. The Data Processors are able to provide information via access to numerous records and sources. For example: (i) Nexxa provides information from the National Do Not Call Registry ("NDNCR"), including date of registration; (ii) Experian provides skip-tracing services to identify the most recent address of an individual based on a combination of name, address history, and/or telephone number;[1] (iii) LexisNexis provides information from public and proprietary records, including information regarding whether a particular telephone number was associated with a business or residence and telephone number subscription information;[2] and (iv) TransUnion provides subscriber information that identifies the person who subscribed to a particular telephone number as of the date of the call.

10.    I regularly use these Data Processors in coordinating data analysis prior to class certification and have used them many times in administering class action settlements, a context in which maximum accuracy and reliability are critical. In my experience, gained over the course of many years of working with the Data Processors, they provide accurate and reliable information and are regularly called upon to provide this type of information in court-supervised class action

---

[1] According to Experian, at www.infolookup.experian.com/metronet, MetroNet provides access to comprehensive contact data on more than 140 million households and 19 million businesses with multiple data sources updated regularly to ensure the most accurate, up-to-date information available.

[2] It is common knowledge within the class action administration industry that LexisNexis is one of the largest aggregators of public records and proprietary information. Their information comes from governmental sources, leading credit bureaus, national address databases, national phone databases, utility information, warranty and subscription information, and thousands of other sources.

settlements, and their information is routinely and reasonably relied upon by experts in the field to distinguish business telephone numbers from non-business telephones.

11. I have provided data analysis utilizing Data Processors' services in TCPA cases that include, but are not limited to, those listed on Exhibit B.

12. I have testified in the following matters as an expert witness at deposition or trial in the last four years in the cases listed on Exhibit C.

## ANALYSIS

**Source Data Files**

13. The files listed on Exhibit D were provided to me by Plaintiffs' counsel. I understand these files represent calls placed by or on behalf of Defendants (the "Source Data").

14. To perform the analysis, the Source Data, including all relevant data points, was loaded into a SQL table from which further data analysis could occur, queries could be run, and additional data points tracked.

**Preliminary Qualifying Call Analysis**

15. The parameters for the initial analysis included steps to exclude call records within the data that met any one of the following criteria: (a) records that do not contain a complete 10-digit telephone number; (b) records that contain area codes for toll-free telephone numbers or area codes not between 201-989; and (c) duplicate records. All other calls are included ("Qualifying Calls").

**Wireless Telephone Number Identification**

16. I was asked by Plaintiffs' counsel to identify telephone numbers that were called when they were in use as wireless telephone numbers. I completed this analysis utilizing the standard protocol of cross-referencing the call log telephone numbers against the Interactive Marketing Solutions (IMS) wireless block, landline-to-wireless, and wireless-to-landline ported telephone numbers files (the "IMS Files").

17. In order to complete this analysis, I cross-referenced the listing of Qualifying Calls telephone numbers, and the dates of those Qualifying Calls, against the IMS Files.

18. The methodology of utilizing the wireless block and ported telephone numbers is a standard process that has been approved by many courts in various cases. A representative listing of these cases is attached hereto as Exhibit E.

19. The IMS Files include dates for landline-to-wireless and wireless-to-landline porting.

20. The Wireless Block file from IMS is comprised of numbers that are assigned to a cellular

telephone service and have not changed that designation.

21. Furthermore, the process by which Qualifying Calls and the dates those calls were made are compared to the IMS Files includes a specific comparison to ensure that the status of each Qualifying Call is or is not wireless at the time of the call.

22. Based upon my data analysis, there are 235,278 calls that were initiated to 50,417 unique telephone numbers that were wireless at the time of the calls (the "Wireless Numbers"). The wireless telephone numbers and the amount of calls they received is attached hereto as Exhibit F.

**Date Delimitation**

23. In addition to the analysis discussed heretofore, I analyzed the Wireless Numbers to find the number of telephone numbers initiated in certain timeframes. The results were as follows:

    a. 184,723 calls were initiated to 42,701 unique Wireless Numbers on or after December 1, 2016.

    b. 138,110 calls were initiated to 31,328 unique Wireless Numbers on or after February 27, 2017.

Attached hereto as Exhibit G are listings of these telephone numbers with call counts.

**Name and Address Information**

24. I understand from Plaintiffs' counsel that the Defendant Quality Merchant Services, Inc. has produced information in this case that includes the name and addresses of the call recipients.

25. If it were necessary, I can identify names and addresses associated with telephone numbers that do not have complete name and address information. Specifically, I can identify the user(s) of a given telephone number and the address(es) of the user(s) for that telephone number at the time of a specific call.

26. To do so, I would use information from reputable data vendors, such as the Data Processors.

27. To obtain such user(s) information, I would provide the relevant telephone numbers to the Data Processors, which would access their databases of public and proprietary information to produce an output including the name and address of the user(s) of those telephone numbers at the time the calls were placed.

28. If necessary, I would coordinate to update any addresses through the United States Postal Service ("USPS") National Change of Address ("NCOA$^{Link}$") database, which contains approximately 160 million records or 48 months of permanent address changes. NCOA$^{Link}$ is updated daily and USPS regularly provides change-of-address information to NCOA$^{Link}$ licensees.

NCOA<sup>Link</sup> helps reduce undeliverable-as-addressed ("UAA") mail by correcting input addresses prior to mailing. Additional address updating via Experian's MetroNet® service would be coordinated for any addresses determined to be undeliverable. Further, I could coordinate with additional data vendors, such as Experian, to identify addresses based upon name and telephone number information for further supplementation of addresses or other information that has not yet been identified.

29.  I regularly use these processes to identify class members in class actions, as do other administration firms. In my experience, these processes are reliable, are reasonably relied upon by experts in the field, and are approved by courts that oversee class action administration, including class notice and settlement administration.

**SUMMARY**

30.  In my opinion, the call records produced in the litigation show 235,278 calls were initiated to 50,417 unique telephone numbers assigned to wireless telephones at the time of the calls.

31.  In my opinion, the calling records produced in the litigation show 184,723 calls were initiated to 42,701 unique wireless telephone numbers on or after December 1, 2016.

32.  In my opinion, the calling records produced in the litigation show 138,110 calls were initiated to 31,328 unique wireless telephone numbers on or after February 27, 2017.

33.  I have reached the opinions expressed herein based on a reasonable degree of certainty in the fields of data management, data analysis, class member identification, and claims administration.

Executed at Milwaukee, Wisconsin, this 22nd day of April, 2018.

_____
Anya Verkhovskaya