Jon B. Fougner (State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

Anthony I. Paronich
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (508) 221-1510
Facsimile: (617) 830-0327

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SIDNEY NAIMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TOTAL MERCHANT SERVICES, INC. and QUALITY MERCHANT SERVICES, INC., <br><br> Defendants. | NO. 4:17-cv-03806-CW <br><br> NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT <br><br> JURY TRIAL DEMAND <br><br> Complaint Filed: July 5, 2017 <br><br> DATE: October 9, 2018 <br> TIME: 2:30 p.m. <br> LOCATION: 1301 Clay St., Oakland, CA 94612 |

TO:    THE CLERK OF THE COURT; and

TO:    DEFENDANTS TOTAL MERCHANT SERVICES, INC. and QUALITY MERCHANT SERVICES, INC. and THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 9, 2018, at 2:30 p.m., or as soon thereafter as this matter may be heard, at the Oakland Courthouse for the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, 94612, Plaintiff Sidney Naiman will move for preliminary approval of a class action settlement in the above-captioned matter.

Plaintiff seeks a Court order that (1) certifies the proposed settlement class for settlement purposes only; (2) grants preliminary approval of the proposed settlement; (3) directs notice to be disseminated to class members in the form and manner proposed by the parties as set forth in the settlement agreement; (4) appoints Epiq to serve as the Settlement Administrator; and (5) sets a schedule and hearing date for final approval of the settlement and related deadlines.

The motion will be based on: this Notice of Motion; the following Memorandum of Points and Authorities; the declarations of Anthony Paronich, Edward Broderick, Jon Fougner, Andrew Heidarpour and Matthew McCue; the attached Class Action Settlement and exhibits thereto; the records and file in this action; and such other matter as may be presented before or at the hearing of the motion.

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................. 1

II. ISSUE TO BE DECIDED ............................................................................... 2

III. BACKGROUND ............................................................................................ 2

    A.    Statutory Background of Plaintiff's Claims ....................................... 2

    B.    Plaintiff's Allegations ......................................................................... 2

    C.    The Litigation and Settlement Negotiations ..................................... 3

    D.    Terms of the Settlement ...................................................................... 5

        1.    The Proposed Settlement Class ................................................ 5

        2.    The Released Claims ................................................................. 6

        3.    The Settlement Fund and Allocation of the Settlement Fund .................... 6

        4.    Remedial and Non-Monetary Relief ...................................... 7

        5.    The Settlement Administrator and Settlement Administration Costs ........ 7

        6.    The Requested Fee Award ........................................................ 8

        7.    The Requested Service Award ................................................. 8

        8.    The Cy Pres Recipient .............................................................. 8

IV. ARGUMENT AND AUTHORITY ............................................................... 8

    A.    The Settlement Class Should Be Preliminarily Certified .................. 10

        1.    The Class Satisfies the Prerequisites in Rule 23(a) ................ 10

        2.    The Class Satisfies the Requirements of Rule 23(b)(3) .......... 12

    B.    The Proposed Settlement Should Be Preliminarily Approved ........... 13

        1.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation Are Considerable ........................................ 13

        2.    The Risk of Maintaining Class Action Status Through Trial Is Real ....... 14

        3.    The Settlement Amount Represents an Extraordinary Outcome for Class Members .................................................. 14

        4.    Plaintiff Has Conducted Sufficient Discovery for the Court to Make an Informed Decision ................................................. 16

        5.    In the Experience and Views of Plaintiff's Counsel, the Outcome is Fair and Adequate for the Class ............................. 16

        6.    The Appropriate Government Entities Will Be Given an Opportunity to Participate ....................................................... 17

        7.    Class Members Have Yet to React to the Proposed Settlement ............. 17

        8.    The Parties Did Not Collude .................................................... 17

    C.    The Proposed Notice Plan Should Be Approved. ............................. 18

        1.    The Settlement Provides for the Best Method of Notice Practicable Under the Circumstances. .................................... 18

i

NOTICE AND MEM. P&A SUPP. PL.'S MOT. PRELIM. APPROVAL CLASS ACTION SETTLEMENT
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

2. The Proposed Form of Notice Adequately Informs Class Members of the Settlement and Their Rights.............................. 19

D. The Schedule for Final Approval....................................... 20

V. CONCLUSION ................................................................. 20

NOTICE AND MEM. P&A SUPP. PL.'S MOT. PRELIM. APPROVAL CLASS ACTION SETTLEMENT
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. AllianceOne Receivables Mgt., Inc.*,
 No. 3:08-cv-00248 (S.D. Cal.) .................................................................. 15

*Agne v. Papa John's Int'l, Inc.*,
 286 F.R.D. 559 (W.D. Wash. 2012) ..................................................... 11, 13

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997) .................................................................................. 10

*Arthur v. Sallie Mae, Inc.*,
 No. 2:10-cv-00198 (W.D. Wash.) ............................................................. 15

*Bayat v. Bank of the West*,
 No. 13-cv-2376 (N.D. Cal.) ...................................................................... 16

*Bee, Denning, Inc. v. Capital Alliance Group*,
 310 F.R.D. 614 (S.D. Cal. 2015) .............................................................. 13

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) .............................................................. 16

*Betorina v. Randstad US, L.P.*,
 No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ............. 9, 17

*In re Bluetooth Headset Products Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) .................................................................... 18

*Booth v. Appstack, Inc.*,
 No. C13-1533 JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) .......... 13

*In re Capital One TCPA Litig.*,
 80 F. Supp. 3d 781 (N.D. Ill. 2015) .......................................................... 15

*Celano v. Marriott Int'l Inc.*,
 242 F.R.D. 544 (N.D. Cal. 2007) .............................................................. 10

*Chavez v. PHC Corp.*,
 No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015) .......... 19

*Churchill Village, L.L.C. v. General Electric*,
 361 F.3d 566 (9th Cir. 2004) ................................................................. 9, 13

*Cotter v. Lyft, Inc.*,
 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...................................................... 9

*Couser v. Comenity Bank*,
 No. 12-cv-2484 (S.D. Cal.) ....................................................................... 16

iii

*Custom LED, LLC v. eBay, Inc.*,
  No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ............................ 14, 15

*Dyer v. Wells Fargo Bank, N.A.*,
  No. 13-cv-02858-JST, 2014 WL 1900682 (N.D. Cal. May 12, 2014) ................................. 15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................. 10, 12

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
  881 F.3d 679 (9th Cir. 2018) ......................................................................................... 10

*Franklin v. Wells Fargo Bank*,
  No. 14-cv-2349 (S.D. Cal.) ............................................................................................ 16

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) ..................................................................................... 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................. 9, 13, 15

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................. 17

*Hawthorne v. Umpqua Bank*,
  No. 11-cv-6700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014) ............................. 19

*Ikuseghan v. Multicare Health System*,
  No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ............................ 12

*Kazemi v. Payless ShoeSource, Inc.*,
  No. 3:09-cv-05143 (N.D. Cal.) ...................................................................................... 16

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................... 16

*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015) .................................................................................. 12

*Kramer v. Autobytel, Inc.*,
  No. 4:10-cv-02722 (N.D. Cal.) ...................................................................................... 16

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014) .............................................................................. 11

*Kwan v. Clearwire Corp.*,
  No. 2:09-cv-01392 (W.D. Wash.) ................................................................................... 16

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ....................................................................................... 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ....................................................................................... 13

iv

*Lushe v. Verengo,*
    No. 13-cv-07632 AB (C.D. Cal.) ................................................................ 16

*Malta v. Freddie Mac & Wells Fargo Home Mtg.,*
    No. 3:10-cv-01290 (S.D. Cal.) ................................................................ 16

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ................................................................ 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 14

*Officers for Justice v. Civil Serv. Com.,*
    688 F.2d 615 (9th Cir. 1982) ................................................................ 9

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ................................................................ 8

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) ................................................................ 8

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................ 8, 9, 14, 17

*Rose v. Bank of Am.,*
    No. 5:12-cv-4009-EJD (N.D. Cal.) ................................................................ 16

*Sarabri v. Weltman, Weinberg & Reis Co.,*
    L.P.A. No. 3:10-cv-01777-AJB-NLS (S.D. Cal.) ................................................ 16

*Schaffer v. Litton Loan Servicing, LP,*
    No. CV 05-07673 MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ................ 19

*Steinfeld v. Discover Fin. Servs.,*
    No. 3:12-cv-01118-JSW (N.D. Cal.) ................................................................ 16

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 9

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................................ 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
    No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374 (N.D. Cal. Oct. 25, 2016) ................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................ 11

*Wellens v. Sankyo,*
    Case No. 3:13-cv-00581-WHO, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ................ 8

*Whitaker v. Bennett Law, PLLC,*
    No. 13-3145, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ................................ 11

v

NOTICE AND MEM. P&A SUPP. PL.'S MOT. PRELIM. APPROVAL CLASS ACTION SETTLEMENT
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*Wolin v. Jaguar Land Rover N. Am., LLC,*
   617 F.3d 1168 (9th Cir. 2010) ............................................................ 13

**Regulatory Cases**

*In re Dish Network, LLC,*
   28 FCC Rcd. 6574 (2013) ................................................................. 2, 3

**Statutes**

28 U.S.C. § 1715 ........................................................................... 7, 17

47 U.S.C. § 227 ........................................................................... *passim*

47 U.S.C. § 227(b)(1) .......................................................................... 2

47 U.S.C. § 227(b)(1)(A) ....................................................................... 6

47 U.S.C. § 227(b)(3) .......................................................................... 6

**Rules**

Fed. R. Civ. P. 23 ................................................................... 10, 18, 19

Fed. R. Civ. P. 23(a) ......................................................................... 10

Fed. R. Civ. P. 23(a)(3) ...................................................................... 11

Fed. R. Civ. P. 23(a)(4) ...................................................................... 11

Fed. R. Civ. P. 23(b) ......................................................................... 10

Fed. R. Civ. P. 23(b)(3) ............................................................. 12, 13, 18

Fed. R. Civ. P. 23(c)(2)(B) ................................................................... 18

Fed. R. Civ. P. 23(e) .......................................................................... 9

Fed. R. Civ. P. 23(e)(1) ...................................................................... 18

vi

NOTICE AND MEM. P&A SUPP. PL.'S MOT. PRELIM. APPROVAL CLASS ACTION SETTLEMENT
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

## I.  INTRODUCTION

Plaintiff Sidney Naiman ("Plaintiff") seeks preliminary approval of a proposed settlement that requires defendant Total Merchant Services, Inc. ("Total Merchant" or "TMS") to pay $7,500,000 to establish a common fund for the benefit of a proposed class of 50,417 persons who Plaintiff alleges received 235,278 total telemarketing calls from Quality Merchant Services, Inc. ("Quality Merchant" or "QMS") on behalf of Total Merchant using an automated telephone dialing system or an artificial or prerecorded voice to telephone numbers assigned to a cellular telephone service or any service for which the called party is charged for the call. The settlement resolves claims against both of these defendants for their alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). After engaging in fact and expert discovery as to Total Merchant and Quality Merchant, taking depositions, arguing two motions to compel discovery responses and amending the complaint twice, Plaintiff was armed with a sufficient understanding of the strengths and weaknesses of his case to enter into settlement negotiations. The parties' settlement discussions were facilitated by Peter Grilli, Esq. in Tampa, Florida in a full-day mediation and continued over the course of the following weeks. The parties have now documented a proposed settlement and request Court approval to notify class members of its terms.

The settlement fund will be distributed through a claims process to class members who submit a simple claim form that is expected to take less than 5 minutes to complete. The amount each class member will receive depends on the number of claims submitted and the number of calls the class member received, which calls are identified in the records Plaintiff obtained in discovery. Based on their experience with claims rates in TCPA and other class settlements, Plaintiff's counsel estimate that each participating class member will receive *at least* $225, with class members who received four calls—the average number received by a class member— expected to receive $900. This recovery is well above the average in TCPA class actions.

1

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

## II.  ISSUE TO BE DECIDED

The issue to be decided by the Court is whether to approve the proposed class action settlement.

## III.  BACKGROUND

### A.  Statutory Background of Plaintiff's Claims

The TCPA renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1).

These prohibitions apply to a seller of goods or services regardless of whether the seller makes the calls directly or hires marketing agents to do so. The FCC affirmed this principle when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

### B.  Plaintiff's Allegations[1]

The relevant factual background is summarized in Plaintiff's motion for class certification, filed under seal. Dkt. No. 82 at 5-12.

In short, Total Merchant sold its payment processing services through its sales representative, Quality, since 2009. *Id.* at 5. Brian Alimento, Quality's head of day-to-day operations, testified that "99.9 percent of our deals were pitched as Total Merchant Services because that was our primary and they are the first right of refusal." *Id.* (citing Dkt. No. 80-17 at

---

[1] Total Merchant does not oppose this motion insofar as it supports the settlement. However, Total Merchant does not concede, and in fact disputes, many of Plaintiff's assertions. Total Merchant's non-opposition to this motion insofar as it supports the settlement shall not constitute a waiver or admission of a finding or evidence that any allegations or claims asserted in this action, individually or on behalf of the class, are appropriate for class treatment. Total Merchant further disputes, and does not admit, any allegations, claims, or liability asserted in this action.

2

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

137:8-9, 139:10-13). He testified that between 98% and 100% of customers acquired by Quality were for TMS. *Id.* (citing Dkt. No. 80-17 at 51:4-6).

Quality contacted potential clients on behalf of TMS using a Spitfire dialer to place autodialed and prerecorded calls to people who had not consented to receive such calls. *Id.* at 8 (citing Dkt. No. 80-17 at 93:4-24); *id.* at 15 (citing Dkt. No. 80-17 at 197:19-198:16). Quality did not subscribe to the National Do Not Call Registry. *Id.* at 8 (citing Dkt. No. 80-17 at 75:13-15). Quality did not scrub cellular telephone numbers from its calling lists. *Id.* (citing Dkt. No. 80-17 at 75:16-19).

Plaintiff alleges that Total Merchant knew Quality was violating the TCPA but continued its relationship with QMS nevertheless. *Id.* at 8-10. Total Merchant finally terminated Quality in May or June of 2018. *Id.* at 10 (citing Dkt. No. 80-17 at 259:7-14, 260:13-17).

Plaintiff's putative class claim covers the telemarketing calls Quality made on behalf of TMS using an automated telephone dialing system or an artificial or prerecorded voice to telephone numbers assigned to a cellular telephone service or any service for which the called party is charged for the call from July 5, 2013 through June 8, 2018.

**C.    The Litigation and Settlement Negotiations**

The parties litigated this action for over a year before commencing settlement negotiations. In his initial Complaint, Plaintiff sued Total Merchant for unsolicited, prerecorded telemarketing. Dkt. No. 1. TMS answered the Complaint, asserting 20 affirmative defenses. Dkt. No. 16. Investigation by Plaintiff's counsel identified another category of alleged TCPA violations by or on behalf of TMS: unsolicited facsimile advertisements. Plaintiff's counsel filed a First Amended Complaint on behalf of Plaintiff and a new plaintiff, Dr. Timothy Collins, challenging both the robocalls/automated telemarketing calls (Plaintiff) and the junk faxes (Dr. Timothy Collins). Dkt. No. 22. TMS answered the First Amended Complaint, this time asserting 25 affirmative defenses. Dkt. No. 23.

The investigation continued. Plaintiff's counsel issued five subpoenas and conducted witness interviews. Declaration of Anthony I. Paronich ("Paronich Decl.") ¶ 8. Plaintiff

3

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1  eventually identified the entity that had placed the calls at issue: Quality Merchant. Plaintiff filed

2  a Second Amended Complaint, naming Quality and its founder, Michael Alimento, as additional

3  defendants. Dkt. No. 41.

4       Getting Quality to comply with its requirements to participate in the litigation was an

5  uphill battle. First, Quality filed an untimely answer signed by its principal, Michael Alimento,

6  who is not an attorney. Dkt. No. 48. Plaintiff filed a motion to strike the answer, Dkt. No. 49,

7  which the Court granted, Dkt. No. 53. Second, Quality and Michael Alimento simply ignored the

8  discovery propounded against them by Plaintiff. Plaintiff filed a motion to compel responses.

9  Dkt. No. 50. At the hearing on the motion, Quality and Michael Alimento were ordered to

10  "produce all documents" within two weeks. Dkt. No. 61.

11       Plaintiff continued to pursue discovery from Quality and Michael Alimento, obtaining

12  crucial calling records documenting the calls that they had allegedly placed on Total Merchant's

13  behalf. Dkt. No. 82-18. Plaintiff's expert determined that Quality made 235,278 calls to 50,417

14  unique cellular telephone numbers. Dkt. No. 82-18 at 4 ¶ 22. Such calling records are crucial in

15  TCPA class actions, which frequently fail without them.

16       With the calling records in hand, Plaintiff's counsel focused on one of the most

17  challenging and important remaining pieces of the puzzle: proving Total Merchant's vicarious

18  liability for Quality's telemarketing. To that end, Plaintiff propounded written discovery,

19  obtaining relevant responses. *E.g.*, Dkt. No. 82-11. After substantial meet-and-confer dialog was

20  unable to resolve a dispute regarding discovery into the financial relationship between Total

21  Merchant and Quality, Plaintiff filed a motion to compel, Dkt. No. 75, which was granted in part,

22  Dkt. No. 87. Plaintiff deposed both Michael Alimento and Brian Alimento (Michael Alimento's

23  son) in Chicago relating to the telemarketing activity of Quality. Dkt. Nos. 80-17, 80-18.

24  Counsel for Total Merchant cross-examined the deponents.

25       Armed with approximately 60,000 pages of written documents and calling records and

26  over 300 pages of deposition transcripts, Plaintiff filed his motion for class certification,

27  supported by 4 declarations and 18 exhibits.

4

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

On July 24, 2018, the parties mediated with Peter Grilli, Esq. Mr. Grilli has extensive experience mediating TCPA cases, including cases involving vicarious liability allegations like the ones at hand. Paronich Decl. ¶ 9. Mr. Grilli challenged Plaintiff's counsel on the strength of Plaintiff's vicarious liability theory and emphasized the risk Plaintiff faced if he continued to pursue the litigation. *Id.* ¶ 10. The parties exchanged proposals and counterproposals, but at the end of the day could not agree on the terms of a settlement. *Id.* ¶ 11. After several follow-up calls, the parties reached an agreement in principle, ultimately hammering out the details, terms, and conditions of the settlement agreement several weeks later. *Id.* ¶ 12.

**D.    Terms of the Settlement**

The terms of the settlement are memorialized in the parties' Class Action Settlement Agreement ("SA"), Paronich Decl., Ex. 1.[2]

**1.    The Proposed Settlement Class**

The proposed settlement class is defined as:

> All persons within the United States to whom Quality Merchant Services, Inc., Michael Alimento, and/or Brian Alimento made a telephone call through the Spitfire dialing software and/or system (i.e., an automated telephone dialing system or an artificial or prerecorded voice) to any telephone number assigned to a cellular telephone service or any service for which the called party is charged for the call for the purpose of promoting Defendant's goods or services from July 5, 2013 through June 8, 2018. These individuals are identified on the Class List.

Paronich Decl., Ex. 1 § 1.41. The proposed settlement class is generally narrower than the class proposed in the operative complaint. *See* Dkt. No. 41 at 16. The differences are summarized in the following table.

| SAC, Dkt. No. 41 at 16 | Settlement Class |
|---|---|
| Includes calls by any third party acting on the defendants' behalf | Includes only calls by Quality Merchant Services, Inc., Michael Alimento, and/or Brian Alimento |
| Includes calls made by any ATDS or artificial or prerecorded voice | Includes only calls made by any ATDS or artificial or prerecorded voice using the Spitfire dialing system |

---

[2] Defined terms used in this motion are defined in the Class Action Settlement Agreement.

| SAC, Dkt. No. 41 at 16 | Settlement Class |
|---|---|
| Covers calls to cell phones | Covers calls to cell phones or numbers for which the called party is charged, which are both claims covered by 47 U.S.C. § 227(b)(1)(A). |
| Spans July 5, 2013 until the date of trial | Spans July 5, 2013 until June 8, 2018 |
| Is open-ended with respect to the identity of the class members | Limits the class to 50,417 persons identified by Plaintiff's expert |

### 2. The Released Claims

In exchange for the benefits provided by the settlement, class members will release any legal claims that may arise from the telemarketing calls made by Quality Merchant on behalf of Total Merchant from four years before the filing of the Action until the date of signature of the Settlement Agreement. SA § 6.1. In the SAC, Plaintiff alleged class claims under 47 U.S.C. § 227(b)(1)(A). Dkt. No. 41 at 19-20. The release covers those and other similar telemarketing claims.

In the SAC, Dr. Collins alleged junk fax claims on behalf of a putative class. Those claims are not sought to be certified, and have been individually resolved.

### 3. The Settlement Fund and Allocation of the Settlement Fund

The proposed settlement requires Total Merchant to pay $7,500,000 into a common fund to distribute to participating class members and to pay the attorneys' fee award (if any), service award (if any), and settlement administration costs (if approved), which fee award (if any), service award (if any), and settlement administration costs (if approved) shall be exclusively paid from the Settlement Fund. SA § 1.44. After payment of the attorneys' fee award, service award, and settlement administration costs approved by the Court, the settlement fund will be distributed to all class members who submit timely and valid claim forms. SA § 4.3(b). Consistent with the statutory damages scheme, *see* 47 U.S.C. § 227(b)(3), distributions will be proportionate to the number of calls received. SA § 4.3(b). Such pro ration tracks the underlying alleged liability—the TCPA provides for at least $500 *per violation*—and is considered fair by Class Counsel. According to calling records obtained in this case, the average Settlement Class member received

6

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

approximately four calls. Paronich Decl. ¶ 13. The minimum number of calls placed to a Settlement Class member was one. The maximum was twenty-eight. *Id.* Based on a 10% claims rate, Plaintiff's counsel estimate that a claimant who received the minimum one call will receive approximately $225, and who received the average four calls, approximately $900. *Id.* at ¶ 14.

Class members will have 60 days from the mailing of the notice to submit a claim form. SA § 5. Any class members who deposit or cash their recovery will receive another *pro rata* distribution from the common fund from class members who did not cash or deposit the first settlement check (unless the cost of doing so is administratively infeasible). SA § 4.3(d). The settlement fund is non-reversionary. SA § 4.3(d). If funds remain due to uncashed checks, they will be disbursed to the National Consumer Law Center, to the extent it is administratively infeasible to further distribute them to settlement class members. SA § 1.15.

**4.     Remedial and Non-Monetary Relief**

In addition to establishing the $7,500,000 common fund, Total Merchant has agreed to take the remedial step of terminating its relationship with Quality. SA § 4.2.

**5.     The Settlement Administrator and Settlement Administration Costs**

The parties retained Epiq as the Settlement Administrator, subject to Court approval. SA § 1.40. Epiq will be responsible for obtaining class members' addresses, mailing notice to class members, following up on undelivered notices, establishing and maintaining a settlement website and a toll-free number, responding to class member inquiries, receiving any requests for exclusion, preparing and delivering the CAFA notice to the appropriate federal and state officials, administering the settlement fund, disbursing the attorneys' fee award (if any) and service award (if any), reviewing claim forms, and distributing the settlement fund to class members who file timely and valid claim forms. SA § 5.1-5.6. Epiq estimates that providing notice and administering the settlement will cost $128,530.00. Paronich Decl. ¶ 15. In the experience of Plaintiff's counsel, that amount is reasonable in relation to the size of the class. *Id.* ¶ 16.

7

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

**6. The Requested Fee Award**

Class Counsel expect to request attorneys' fees of 25% of the Settlement Fund, or $1,875,000, to be exclusively paid from the Settlement Fund, which is in line with the Ninth Circuit's benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

**7. The Requested Service Award**

Plaintiff will apply for a service award in the amount of $10,000, to be exclusively paid from the Settlement Fund, in recognition of his service to the class and in consideration for a release of Plaintiff's individual claim. SA § 15.2. Service awards that are "intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). The awards recognize the effort class representatives expend, the financial or reputational risk they assume, and their willingness to act as private attorneys general. *Rodriguez*, 563 F.3d at 958-59.

Plaintiff devoted time to this case that would otherwise have been spent on business and assisted with developing the factual allegations and in negotiations. Heidarpour Decl. ¶ 5. Plaintiff's willingness to step forward and lead this litigation on behalf of the class, and the efforts Plaintiff put forward to ensure this successful resolution, justify the requested service award. *See, e.g.*, *Wellens v. Sankyo*, Case No. 3:13-cv-00581-WHO, 2016 WL 8115715, at *4 (N.D. Cal. Feb. 11, 2016) (awarding class representatives service awards of $25,000 each).

**8. The Cy Pres Recipient**

If there is money left over that is too small to be practicably distributed to class members, the parties propose that it go to the National Consumer Law Center, a nonprofit organization that works for consumer justice and economic security for low-income and other disadvantaged people, including advocating against illegal telemarketing.

## IV. ARGUMENT AND AUTHORITY

In the Ninth Circuit, "there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529

8

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

F.2d 943, 950 (9th Cir. 1976). Courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Rodriguez*, 563 F.3d at 964.

Proposed class action settlements are not effective unless approved by the Court. Fed. R. Civ. P. 23(e). The main purpose of the Court's supervision of class action settlements is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). Courts use a "two-step process" for the approval of class action settlements, in which courts "first determine whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374, at *734 (N.D. Cal. Oct. 25, 2016) (citation, internal quotation marks and alteration marks omitted).

In the past, courts have focused only on whether the proposed agreement appears to be non-collusive, is free of "obvious deficiencies" and generally falls within the range of "possible" approval. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). More recently, several courts in this district have required a more fulsome consideration of the merits of a settlement at the preliminary approval stage. *E.g.*, *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *6 (N.D. Cal. Apr. 6, 2017); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016). These courts apply the factors set forth by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575-76 (9th Cir. 2004), to determine whether a settlement is fair, adequate, and reasonable at the final approval stage.

Plaintiff agrees that a more exacting review is appropriate at preliminary approval and will address each of the factors outlined by the Ninth Circuit: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

9

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. In this case and for this Class Action Settlement, the factors weigh in favor of preliminary approval.

When a case settles before class certification, the Court must also determine whether the class satisfies the Rule 23 requirements for class certification. *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 881 F.3d 679, 705 (9th Cir. 2018). Because a settled case will not be tried, manageability considerations are not relevant. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**A. The Settlement Class Should Be Preliminarily Certified**

Plaintiffs requesting class certification must demonstrate "that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). The proposed amended class definition, which is narrowly tailored to conform to the evidence obtained in this litigation, satisfies all of the Rule 23 requirements.

**1. The Class Satisfies the Prerequisites in Rule 23(a)**

The Rule 23(a) requirements are numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23(a). All are satisfied for the proposed settlement class.

Numerosity: The proposed class includes more than 50,000 people, Dkt. No. 82-18 at 4 ¶ 22, which satisfies the numerosity requirement, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when the class comprises 40 members or more).

Commonality: The proposed class satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The central questions in this case are whether the calls at issue violated the TCPA and, if so, whether Total Merchant is vicariously liable for Quality Merchant's conduct in placing them. The answers to these questions turn on common evidence and can be fairly resolved for all class members at once. *See, e.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (finding that questions of vicarious liability satisfied commonality because the issue "turns on the federal common law of agency and can arise from actual authority, apparent authority, or ratification," a determination of which will depend on the defendants' conduct rather than that of class members); *Whitaker v. Bennett Law, PLLC,* No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding that commonality was satisfied where the central issue was whether the defendant used an ATDS or prerecorded or artificial voice to make unsolicited calls).

Typicality: Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of other class members because they arise from the same course of alleged conduct by Total Merchant and Quality Merchant and are based on the same legal theories. Typicality is readily satisfied in TCPA cases like this one, where the claims are based on the defendant's alleged common, coordinated telemarketing campaigns. *See, e.g.*, *Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the plaintiff's claims, "like all class members' claims, arise from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor . . . ."). That is especially true here, where each proposed class member was allegedly targeted by the same third-party vendor using the same equipment.

Adequacy: Finally, the adequacy requirement is satisfied when the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make

11

this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). Plaintiff has no conflicts of interest with the other proposed class members and has demonstrated its commitment to the class by actively participating in the litigation. Plaintiff is represented by counsel who are experienced in litigating class action cases and TCPA claims in particular, and several of whom have previously been appointed to represent class members' interests in other cases. *See* Paronich Decl. ¶ 5; Declaration of Edward Broderick ¶ 9; Declaration of Matthew McCue ¶ 10.

### 2. The Class Satisfies the Requirements of Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As set forth in Plaintiff's motion for class certification, Dkt. No. 82, both requirements are satisfied in this case.

Predominance: Common questions predominate over any questions affecting only individual class members. The overarching common question is whether Total Merchant is vicariously liable for the calls placed by Quality Merchant. This question can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes certification appropriate. The other elements of Plaintiff's claims will also be proven with common evidence, including whether Quality Merchant used an automatic telephone dialing system or a pre-recorded message and whether Total Merchant or Quality Merchant acted willfully. Because of the numerous common issues that typically predominate over individual issues in TCPA cases, and the bright-line standards for liability and specified damages under the statute, courts routinely certify TCPA claims. *See, e.g.*, *Ikuseghan v. Multicare Health System*, No. C14-5539 BHS, 2015 WL 4600818, at *8 (W.D. Wash. July 29, 2015); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015); *Booth v. Appstack, Inc.*, No. C13-1533

1  JLR, 2015 WL 1466247, at *13 (W.D. Wash. Mar. 30, 2015); *Bee, Denning, Inc. v. Capital*
2  *Alliance Group*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

3      <u>Superiority</u>: Class certification is "superior to other available methods for fair and
4  efficient adjudication of the controversy" at bar. Fed. R. Civ. P. 23(b)(3). Classwide resolution is
5  the only practical method of addressing the alleged telemarketing violations at issue in this case.
6  There are tens of thousands of class members with modest individual claims, most of whom
7  likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of*
8  *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)
9  (cases involving "multiple claims for relatively small individual sums" are particularly well
10  suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,
11  1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of
12  litigating on an individual basis, this factor weighs in favor of class certification."); *Agne*, 286
13  F.R.D. at 571 ("Five hundred dollars is not sufficient to compensate the average consumer for
14  the time and effort that would be involved in bringing a small claims action …."); *Bee, Denning*,
15  310 F.R.D. at 630 ("In the context of the TCPA, the class action device likely is the optimal
16  means of forcing corporations to internalize the social costs of their actions"). Class actions are
17  particularly important under the TCPA because it does not include a provision for attorney's fees
18  if a claim is successful.

19  **B.**    **The Proposed Settlement Should Be Preliminarily Approved**

20      Each of the factors outlined by the Ninth Circuit in *Hanlon* and *Churchill Village*—
21  except for the reaction of class members, since they have yet to be notified and thus have not yet
22  reacted one way or the other—support preliminary approval of the settlement.

23      **1.**    **The Risk, Expense, Complexity, and Likely Duration of Further Litigation Are Considerable**
24  
25      Plaintiff has many procedural hurdles to clear before a potential successful resolution
26  through further litigation. First, Plaintiff must continue his discovery efforts, both written
27  discovery and depositions. Plaintiff will likely be deposed. Plaintiff must move for class

1  certification, a necessary and always risky stage in the life of a class action and one at which

2  Total Merchant and/or Quality would likely mount an opposition. As discussed above,

3  defendants in TCPA cases often move for summary judgment, and sometimes prevail, on issues

4  of vicarious liability. The parties would retain experts and likely file *Daubert* challenges.

5  Plaintiff would then not only have to prevail at trial but retain any favorable judgment through

6  the appellate process. It is because almost all class actions involve a high level of risk, expense,

7  and complexity that judicial policy so strongly favors resolving class actions through settlement.

8  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

9       Litigating this case to trial and through any appeals would be expensive and time-

10  consuming, take years and present risks to both parties. The settlement, by contrast, provides

11  prompt relief for class members. *See Rodriguez*, 563 F.3d at 966; *Nat'l Rural Telecomms. Coop.*

12  *v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries

13  of litigation and compare the significance of immediate recovery by way of the compromise to

14  the mere possibility of relief in the future, after protracted and expensive litigation.").

15       **2.    The Risk of Maintaining Class Action Status Through Trial Is Real**

16       Pursuant to the schedule established by this Court, Total Merchant has not yet filed an

17  opposition to, and the Court has not yet heard, Plaintiff's motion for class certification. There is a

18  risk that the Court will deny certification or subsequently decertify the class. *See Custom LED,*

19  *LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014)

20  ("[B]oth parties recognize that eBay will actively oppose certification of the class if the

21  settlement is not approved. As such, the Court finds that the potential difficulties associated with

22  obtaining class certification weigh in favor of approving the settlement.").

23       **3.    The Settlement Amount Represents an Extraordinary Outcome for Class**
         **Members**

24

25       The settlement requires Total Merchant to pay $7,500,000 into a non-reversionary

26  Settlement Fund. SA § 1.44. Each person who submits a valid claim form receives a share of the

    Settlement Fund after settlement costs, fee awards (if any), and incentive awards (if any) are

27

deducted ("Net Settlement Fund") based on the following formula: Net Settlement Fund **divided by** the total calls received by Settlement Class Members who submit timely and valid claim forms as set forth in calling records obtained in this litigation **multiplied by** the total calls received by the respective Participating Class Member. *Id.* § 4.3(b). Using this formula, and assuming a 10% claims rate, Plaintiff's counsel estimate that each claimant will receive at least $225, and the claimant that has the average amount of calls of 4 would receive $900. *Id.*

The settlement provides class members with meaningful cash payments now and eliminates the risk of later payments at a reduced rate due to higher costs and losses during litigation—and the risk of no payment at all. "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer v. Wells Fargo Bank, N.A.*, No. 13-cv-02858-JST, 2014 WL 1900682, at *6 (N.D. Cal. May 12, 2014); *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Even if Plaintiff and the class were to prevail at class certification, summary judgment, trial and appeal, there is still the matter of satisfying a judgment. Courts recognize this and other risks when approving TCPA class settlements and evaluate the dollar amounts accordingly. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving TCPA settlement that provided estimated awards of $52.50 per class member and noting that "complete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt Chase"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving TCPA settlement providing an estimated $34.60 per claimant where Capital One's exposure was a minimum $950 billion and thus "complete victory would most surely bankrupt the prospective judgment debtor").[3] And those defendants had far deeper pockets than Total Merchant.

---

[3] *See also Adams v. AllianceOne Receivables Mgt., Inc.*, No. 3:08-cv-00248 (S.D. Cal.) ($1.60 per class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198 (W.D. Wash.) ($3.10 per class member); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.) ($3.85 per class member); *Couser v. Comenity Bank*, No. 12-cv-2484 (S.D. Cal.) ($2.13 per class member); *Franklin v.*

15

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

**4. Plaintiff Has Conducted Sufficient Discovery for the Court to Make an Informed Decision**

For this factor, courts look to whether the parties have sufficient information to make an informed decision with respect to the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, the parties engaged in sufficient discovery to have a thorough understanding of the legal and factual issues in the case, as discussed above. Through depositions, written and document discovery of Total Merchant and Quality Merchant, and third-party discovery, Plaintiff developed an appreciation of the strengths and weaknesses of his claims and the defenses thereto. It is with this foundation that the parties were able to negotiate this settlement.

**5. In the Experience and Views of Plaintiff's Counsel, the Outcome is Fair and Adequate for the Class**

Class Counsel have extensive experience litigating and settling class actions, and TCPA class actions in particular. *See* Paronich Decl. ¶ 5; Declaration of Edward Broderick ¶ 9; Declaration of Matthew McCue ¶ 10; Declaration of Jon Fougner ¶ 12-13; Declaration of Andrew Heidarpour ¶ 4. The recommendation of experienced counsel weighs in favor of granting final approval and creates a presumption of reasonableness. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009). Plaintiff's counsel endorses the settlement as being fair, reasonable, and adequate. Paronich Decl. ¶ 17; Declaration of Edward Broderick ¶ 12; Declaration of Matthew McCue ¶ 13; Declaration of Jon Fougner ¶ 15; Declaration of Andrew Heidarpour ¶ 6.

---

*Wells Fargo Bank*, No. 14-cv-2349 (S.D. Cal.) ($3.78 per class member); *Kazemi v. Payless ShoeSource, Inc.*, No. 3:09-cv-05143 (N.D. Cal.) ($1.18 per class member); *Kramer v. Autobytel, Inc.*, No. 4:10-cv-02722 (N.D. Cal.) ($0.26 per class member); *Kwan v. Clearwire Corp.*, No. 2:09-cv-01392 (W.D. Wash.) ($3.50 per class member); *Lushe v. Verengo*, No. 13-cv-07632 AB (PJWx) (C.D. Cal.) ($6.86 per class member); *Malta v. Freddie Mac & Wells Fargo Home Mtg.*, No. 3:10-cv-01290 (S.D. Cal.) ($3.94 per class member); *Sarabri v. Weltman, Weinberg & Reis Co.*, L.P.A. No. 3:10-cv-01777-AJB-NLS (S.D. Cal.) ($0.85 per class member); *Steinfeld v. Discover Fin. Servs.*, No. 3:12-cv-01118-JSW (N.D. Cal.) ($1.45 per class member); *Rose v. Bank of Am.*, No. 5:12-cv-4009-EJD (N.D. Cal.) ($4.15 per class member).

**6. The Appropriate Government Entities Will Be Given an Opportunity to Participate**

No governmental entity is a party to this litigation. Notice will be issued to the Attorney General of the United States and Attorneys General of each of the States in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715. SA § 7.3. They will be given an opportunity to raise any objections or concerns they may have.

**7. Class Members Have Yet to React to the Proposed Settlement**

Class members have not yet had an opportunity to react to the proposed settlement because they have not been notified of it. Plaintiff will provide the Court with information about class members' reaction in its motion for final approval of the settlement.

**8. The Parties Did Not Collude**

This case has been hard fought since the beginning, as described above. The parties were always adversarial, including during settlement discussions. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011); *accord Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.") (collecting cases). The parties did not commence settlement discussions until over a year into the case, just four months before the fact discovery cut-off. *See* Dkt. No. 38. Plaintiff amended the complaint twice, conducted discovery, served his expert witness report, filed his class certification motion and completed sufficient discovery to have a solid understanding of the strengths and weaknesses of his claims. The settlement was negotiated with the assistance of Peter Grilli, Esq. in Tampa, Florida during an in-person mediation session and continued negotiations over the following weeks. Courts recognize that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Betorina*, 2017 WL 1278758, at *7.

The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations: (1) when counsel receive a disproportionate portion of the settlement; (2) when the parties agree to a "clear

sailing" arrangement providing for the payment of attorneys' fees separate and apart from class

funds; and (3) when the parties agree that any fees not awarded will revert to defendants rather

than be added to the class fund. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947

(9th Cir. 2011) (collecting cases). None of these warning signs are present in this case. Class

Counsel will request a fee proportionate to the size of the settlement fund (25% of it), so that

Class Counsel's incentives are directly aligned with those of class members. There is no clear

sailing provision; Total Merchant has the right to object to the amount that Class Counsel

requests. SA § 15.1. Nor is there any reverter. Any fees not awarded will be distributed to class

members in a successive round of distributions, and then, if necessary, to the cy pres recipient.

SA § 1.44, 4.3(d). Thus, none of the Ninth Circuit's red flags is present.

**C.** **The Proposed Notice Plan Should Be Approved.**

"The court must direct notice in a reasonable manner to all class members who would be

bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the settlement class is certified under

Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B).

The parties have agreed on a notice plan that will provide class members with direct mail

notice of a postcard that describes the settlement and class members' rights in plain English and

provides them with the settlement website and a toll-free number to obtain more information. As

discussed below, the notice plan satisfies the requirements of Rule 23 and due process.

**1.** **The Settlement Provides for the Best Method of Notice Practicable Under the Circumstances.**

The typical class member in this case is an American local business owner. The parties

propose to mail a postcard notice by first-class mail to all 50,417 class members. SA § 7. Quality

Merchant has produced associated names and addresses for 40,592 of the telephone numbers that

appear in the calling records, and the Settlement Administrator will perform reverse look-ups on

the remaining numbers. SA § 7.2(a). If a postcard notice is returned with a forwarding address,

the Settlement Administrator will forward the notice to the updated address via first-class mail. *Id.* If a postcard notice is returned as undeliverable without a forwarding address, the Settlement Administrator will perform a reasonable "skiptrace" search using the National Change of Address database to obtain an updated address and forward the notice to the updated address via first-class mail. *Id.* Because the notice is a postcard, the recipient will be able to see its content without having to open an envelope.

The Settlement Administrator will establish and maintain a settlement website with detailed information about the settlement. SA § 7.2(b). The website address will be included in the postcard notice. *Id.* The Settlement Administrator will also establish a toll-free number that class members can call to receive more detailed information about the settlement. *Id.* Language substantially similar to that suggested in the Procedural Guidance for Class Action Settlements of this Court will be included. Plaintiffs believe this is the most effective way to alert class members to the existence of the settlement and convey detailed information about the settlement. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving a similar postcard notice plan).

      **2.**     **The Proposed Form of Notice Adequately Informs Class Members of the Settlement and Their Rights.**

The proposed postcard notice, attached as Exhibit 3 to the Settlement Agreement, together with the website notice, attached as Exhibit 2 to the Settlement Agreement, is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and describes "the action and the plaintiffs' rights in it." *Hawthorne v. Umpqua Bank*, No. 11-cv-6700-JST, 2014 WL 4602572, at *6 (N.D. Cal. Sept. 15, 2014) (quoting *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). The notice is written in plain English and will include the dates for class members to opt-out and object to the settlement and of the final approval hearing, along with a clear explanation of how to take each of those steps. *See Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if it

'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (internal quotation marks omitted)).

To opt out, a class member need only write to the settlement administrator (and not the court). SA § 14.1. To object, a class member need only write to the court (and not the settlement administrator). SA § 14.3.

**D.    The Schedule for Final Approval.**

The next steps in the settlement approval process are to schedule a final approval hearing, notify class members of the settlement and hearing, and provide class members with the opportunity to submit claim forms and any comments about the settlement. The parties propose the following schedule for final approval of the settlement:

| Date or Deadline | Date |
|---|---|
| Administrator sends notice to class members | 21 days after preliminary approval |
| Class Counsel file motion for attorneys' fees | 30 days after preliminary approval |
| Class members submit claims, object, and request exclusion | 81 days after preliminary approval |
| Class Counsel file motion for final approval | 14 days before the final approval hearing |
| Final approval hearing | At least 100 days after preliminary approval order |

## V.    CONCLUSION

Plaintiff respectfully requests that the Court enter an order that (1) certifies the proposed settlement class for settlement purposes only; (2) grants preliminary approval of the proposed settlement; (3) directs notice to be disseminated to class members in the form and manner proposed by the parties as set forth in the settlement agreement; (4) appoints Epiq to serve as the Settlement Administrator; and (5) sets a schedule and hearing date for final approval of the settlement and related deadlines.

RESPECTFULLY SUBMITTED AND DATED on August 31, 2018.

By: _Jon B. Fougner_

Anthony I. Paronich, _Admitted Pro Hac Vice_
Email: anthony@broderick-law.com
Edward A. Broderick, _Admitted Pro Hac Vice_
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue, _Admitted Pro Hac Vice_
E-mail: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Andrew W. Heidarpour, _Admitted Pro Hac Vice_
E-mail: AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

_Attorneys for Plaintiffs and the Proposed Class_

## <u>CERTIFICATE OF SERVICE</u>

2

I, Jon B. Fougner, hereby certify that on August 31, 2018, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to

4

all counsel of record.

5

By: *Jon B. Fougner*

6

Jon B. Fougner (State Bar No. 314097)
7
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
8
San Francisco, CA 94108
Telephone: (434) 623-2843
9
Facsimile: (206) 338-0783

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

22

NOTICE AND MEM. P&A SUPP. PL.'S UNOPPOSED MOT. PRELIM. APPROVAL
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW