Jon B. Fougner (State Bar No. 314097)
jon@FougnerLaw.com
600 California Street, 11th Floor
San Francisco, CA 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

Anthony I. Paronich, *Admitted Pro Hac Vice*
anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (508) 221-1510
Facsimile: (617) 830-0327

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff Sidney Naiman and the Settlement Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SIDNEY NAIMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>TOTAL MERCHANT SERVICES, INC. and QUALITY MERCHANT SERVICES, INC.,<br><br>Defendants. | Case No. 4:17-cv-03806-CW<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD**<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed:  July 5, 2017<br><br>**DATE**:  April 2, 2019<br><br>**TIME**:  2:30 p.m.<br><br>**LOCATION**: Courtroom 6 – 2nd Floor, 1301 Clay St., Oakland, CA 94612 |

1   TO:     THE CLERK OF THE COURT; and

2   TO:     DEFENDANTS TOTAL MERCHANT SERVICES, INC. and QUALITY MERCHANT

3           SERVICES, INC. and THEIR ATTORNEYS OF RECORD:

4

5           PLEASE TAKE NOTICE that on April 2, 2019, at 2:30 p.m., in Courtroom 6, 2nd Floor,

6   of the United States District Court for the Northern District of California, 1301 Clay Street,

7   Oakland, California 94612, Class Counsel and Plaintiff Sidney Naiman ("Plaintiff") will

8   respectfully move the Court for (1) an award of attorneys' fees of $1,875,000, which is 25% of

9   the $7,500,000 common fund, and reimbursement of $20,591.19 in costs; and (2) $10,000 as a

10  service award to Plaintiff.

11          The motion will be based on the following memorandum of points and authorities, the

12  attached declarations of Angie Birdsell, Edward Broderick, Jon Fougner, Andrew Heidarpour,

13  Matthew McCue, Sidney Naiman and Anthony Paronich, the class action settlement and exhibits

14  thereto, the stipulation amending it, the record and file in this action and such other matter as

15  may be presented before or at the hearing.

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ISSUE TO BE DECIDED ............................................................................................. 2

III. FACTUAL BACKGROUND .......................................................................................... 2

   A.   Statutory basis of the claims ................................................................................... 2

   B.   The challenged telemarketing ................................................................................. 2

   C.   Plaintiff's persistent investigation and litigation .................................................... 3

   D.   Plaintiff secures classwide relief despite risks and challenges to continuing to litigate ..... 5

   E.   Plaintiff's achievement of extraordinary legal and equitable relief for class members ..... 5

IV.  AUTHORITY AND ARGUMENT ............................................................................... 6

   A.   The percentage-of-the-fund method is the right way to determine reasonable attorneys' fees here because the benefit to the class is easily quantified. ................................. 6

   B.   A fee award at the Ninth Circuit benchmark of 25% of the common fund will fairly compensate Class Counsel for their work on behalf of the class ............................... 8

      1.   Class Counsel achieved an excellent result for the class ................................. 9

      2.   Class Counsel assumed a significant risk of no recovery ............................. 10

      3.   Class Counsel's skill and quality of work ensured a recovery for the class. ........ 12

      4.   Contingent awards in similar cases show that the requested fee is at market—or below market in light of the results achieved. ........................................................ 13

   C.   A lodestar crosscheck confirms that the requested fee is reasonable ....................... 14

      1.   Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience and reputation and within the range approved by this Court ......................................................................... 14

      2.   Class Counsel expended a reasonable number of hours litigating the case. ........ 16

      3.   The requested multiplier is within the range endorsed by the Ninth Circuit and less than that awarded in cases that have achieved *far* less recovery per class member ........ 17

   D.   Class Counsel's litigation costs were necessarily and reasonably incurred ................ 20

   E.   In light of his results, efforts and risk borne, a service award of $10,000 to Plaintiff is reasonable .............................................................................................................. 21

V.   CONCLUSION ........................................................................................................... 23

VI.  SIGNATURE ATTESTATION ................................................................................... 23

iii

Notice Mot. & Mem. P&A Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. AllianceOne*, Case 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012), ECF No. 137 ..................................................................................................................... 25

*Banerjee v. Avinger, Inc.*, No. 4:17-cv-03400-CW, 2018 U.S. Dist. LEXIS 184028 (N.D. Cal. Oct. 24, 2018) ................................................................................................. 18

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................... 6

*Brey Corp. v. LQ Mgmt. LLC*, No. - JFM-11-718, 2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014) ...................................................................................................... 13

*Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018) ..................................................................... 13

*Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB (VBKx), 2016 U.S. Dist. LEXIS 46757 (C.D. Cal. Apr. 4, 2016) ............................................................ 25

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................. 24

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ...................................................................................... 12, 14

*Di Giacomo v. Plains All Am. Pipeline*, Nos. H-99-4137, H-99-4212, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) ..................................................................... 23

*Donaca v. Dish Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014) .................................. 13

*Fabricant v. United Card Solutions LLC*, No. 2:18-cv-01429 (C.D. Cal. July 24, 2018), ECF No. 34 ................................................................................................................ 13

*Fitzhenry v. ADT Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) .................................................................... 13

*Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206 (N.D. Cal. Sept. 27, 2018) ....................................................................................... 15, 16

*Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452 (9th Cir. 2009) .................................. 6

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ..................... 24

*Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 127717 (E.D. Mich. Aug. 11, 2017) ...................................................................................................... 23

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ...................................................................................... 21, 26

*Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2016 U.S. Dist. LEXIS 109417 (W.D. Wash. Aug. 16, 2016) ............................................................................... 16

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) .................................. 7

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ................. 7, 10, 17

iv

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) 16, 24

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997) ........................................................................................................ 10

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108 (N.D. Cal. Dec. 6, 2017)................................................... 10, 13, 18

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................. 7

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .............................. 11, 26

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005).......................................................... 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).......................... 7

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) 23

*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448 (M.D. Fla. June 5, 2017) ......................................................................................... 16

*Jenson v. First Tr. Corp.*, No. 2:05-cv-03124-ABC-CT, 2008 WL 11338161 (C.D. Cal. June 9, 2008) .......................................................................................................... 12

*Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018) ...................................................................................................... 13

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219 (N.D. Cal. May 11, 2018) ......................................................................................... 22

*Jones v. Royal Admin. Servs. Inc.*, 887 F.3d 443 (9th Cir. 2018) ................................................. 14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)...................................................... 23

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) .............................................................................................................. 15

*Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 U.S. Dist. LEXIS 203725 (M.D.N.C. Dec. 3, 2018) ...................................................................................................... 20

*Kramer v. Autobytel, Inc.*, No. 10-cv-02722-CW, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ...................................................................................................... 1, 2, 20, 25

*Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010 (9th Cir. 2018)................................... 14

*Levitt v. Fax.com*, No. 05-949, 2007 U.S. Dist. LEXIS 83143 (D. Md. May 25, 2007) ............... 4

*Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 U.S. Dist. LEXIS 186812 (N.D. Cal. May 27, 2016) ....................................................................................... 15

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 23

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-DAD-JLT, 2017 U.S. Dist. LEXIS 194516 (E.D. Cal. Nov. 22, 2017).......................................................... 22

*Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sept. 8, 2017) ...................................................................................................... 16

v

Notice Mot. & Mem. P&A Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*Mey v. Pinnacle Sec., LLC*, Civil Action No. 5:11CV47, 2012 U.S. Dist. LEXIS 129267 (N.D.W. Va. Sept. 12, 2012) .......................................................................................................................... 13

*Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2014 U.S. Dist. LEXIS 19145 (N.D. Cal. Feb. 13, 2014) ............................................................................................................................... 19

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .......................................................... 17

*Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) ..................................................................................................................................... 13

*Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766 (N.D. Cal. Jan. 29, 2014) ......................................................................................................................................... 19

*Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825 (D. Md. 2011) ........................................... 4

*Rainbow Bus. Sols. v. MBF Leasing LLC*, No. 10-cv-01993-CW, 2017 U.S. Dist. LEXIS 200188 (N.D. Cal. Dec. 5, 2017) ............................................................................................................ 18

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................................... 26

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ........................................................................................................................... 24

*Sherman v. Yahoo! Inc.*, No. 13-CV-00041-GPC (WVG), 2015 U.S. Dist. LEXIS 192206 (S.D. Cal. Feb. 20, 2015) ..................................................................................................................... 27

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................................................... 26

*Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780 (9th Cir. 2007) ................................................... 22

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ......................................................... 8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ............................................ 23

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) ..................................... 24

*Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 182521 (N.D. Cal. Dec. 9, 2016) ................................................................................................................. 17, 19

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) ...................................................... 25

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................... passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................................ 8

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ..................................................................................................................... 26

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ........................................................................................................................... 16

**Statutes**

47 U.S.C. § 227 ................................................................................................................................... 1

47 U.S.C. § 227(b)(1) ......................................................................................................................... 2

47 U.S.C. § 227(b)(3)(B) .................................................................................................................... 5

vi

Notice Mot. & Mem. P&A Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

**Other Authorities**

Alan Hirsch et al., Awarding Attorneys' Fees and Managing Fee Litigation (3d ed. 2015).......... 7

*Beth-Ann E. Krimsky*, Super Lawyers (last visited Dec. 10, 2018),
  https://profiles.superlawyers.com/florida/ft-lauderdale/lawyer/beth-ann-e-krimsky/b089bfda-
  68cf-4243-997e-910534fa1239.html ................................................................................ 12

Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book
  and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-
  releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc................ 22

Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC
  News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-
  americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls) ............................ 22

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473 (1981) ..... 18

Joint Decl. William C. Fredericks, Ex Kano S. Sams II, and Francis A. Bottini, Jr. Supp. Pl.'s
  Mot. Final Approval Class Action Settlement and Pl.'s Counsel's Mot. Award Attorneys' Fees
  and Expenses, *Banerjee v. Avinger, Inc.*, No. 4:17-cv-03400-CW (N.D. Cal. Sept. 11, 2018),
  ECF No. 124-2 ................................................................................................................ 15

Joint Mot. Preliminary Approval Class Action Settlement; Mem. P&A Supp. Thereof, *Adams v.
  AllianceOne*, Case 3:08-cv-00248-JAH-WVG (S.D. Cal. Feb. 24, 2012), ECF No. 109 ........ 20

Mem. P&A Supp. Pl.'s Mot Award Attorneys' Fees and Costs and Service Award Named Pls.,
  *Adams v. AllianceOne*, Case 3:08-cv-00248-JAH-WVG (S.D. Cal. July 9, 2012), ECF No.
  115-1 ............................................................................................................................. 20

Notice Mot. & Mot. Preliminary Approval Class Action Settlement & Certification Settlement
  Class, *Couser v. Comenity Bank*, No. 12cv2484-MMA-BGS (S.D. Cal. Sept. 5, 2014), ECF
  No. 52-1 ......................................................................................................................... 20

Pl.'s Mot. Supp. Service Award, Attorneys Fees, and Costs, *Abante Rooter and Plumbing, Inc. v.
  New York Life Ins. Co.*, Civil Action No. 1:16-cv-03588-BCM, ECF Nos. 34, 34-1 (S.D.N.Y.
  June 23, 2017) .................................................................................................................. 10

Pl.'s Notice Mot. & Mot. Preliminary Approval Class Action Settlement Agreement, *Kramer v.
  Autobytel, Inc.*, No. 10-cv-02722-CW (N.D. Cal. July 18, 2011), ECF No. 121 ................ 1, 20

Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019
  (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-
  will-be-scam-calls-by-2019-300711028.html................................................................. 23

Press Release, Greenspoon Marder, Greenspoon Marder Law Attorney Beth-Ann Krimsky
  Honored As One of the Top 20 South Florida Women in Law for 2015 (Aug. 10, 2015),
  https://www.gmlaw.com/news/greenspoon-marder-law-attorney-beth-ann-krimsky-honored-
  as-one-of-the-top-20-south-florida-women-in-law-for-2015/ ................................................ 12

Report and Recommendation re: Mot. Attorneys' Fees, *Moore v. Verizon Commc'ns Inc.*, No. C
  09-1823 SBA (N.D. Cal. Nov. 27, 2013), ECF No. 211 ...................................................... 15

Richard A. Posner, Economic Analysis of Law (8th ed. 2011)................................................. 18

vii

Notice Mot. & Mem. P&A Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf. ................................................ 22

Supp'l Fee Decl. John G. Jacobs Resp. Court's Order November 27, 2013, *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI (N.D. Cal. Dec. 12, 2013), ECF No. 248 ........................................ 16

Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html......... 22

Task Force on Contingent Fees, Tort Trial and Insurance Practice Section of the American Bar Association, *Report on Contingent Fees in Class Action Litigation*, 25 Rev. Litig. 459 (2006) 8

Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937 (2017) .............................................................................................................................. 8

Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls.................................................................... 22

WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ ........................................ 22

William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (2008) .............................................................................................................................. 7

**Rules**

Fed. R. Civ. P. 23(h) .......................................................................................................... 20

**Treatises**

Manual for Complex Litigation, Fourth § 14.121 (2004).................................................. 8

William B. Rubenstein, 5 Newberg on Class Actions (5th ed. 2017) ...................... 8, 18

**Regulations**

*In re Dish Network, LLC*, 28 FCC Rcd. 6574 1 (2013) .................................................. 2

## I.   __INTRODUCTION__

The outcome achieved for class members in this case is more than ten times better than that in the typical Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 settlement. As shown below, most such settlements amount to less than $10 per class member, whereas the common fund negotiated in this case is worth ***$149 per class member***. Dkt. No. 92 at CM/ECF p. 9:4. If historical claim rates hold, the average claimant will receive approximately $900, and those of the 272 class members receiving the most calls who make claims will likely receive an award over $4,000 each and as high as $6,300. Decl. Angie Birdsell Supp. Pl.'s Mot. Attorneys' Fees, Reimbursement Costs and Service Award ("Birdsell Decl.") ¶¶ 4-6.

Plaintiff Sidney Naiman ("Plaintiff") and his counsel achieved this extraordinary result by aggressively but efficiently litigating this case through discovery and to a pending class certification motion before engaging in mediation and subsequent settlement negotiations with Defendant Total Merchant Services, Inc. ("Total Merchant") and Quality Merchant Services, Inc. ("Quality"). The settlement provides prompt and certain cash awards for class members as well as total cessation of the challenged telemarketing, compared to distant and uncertain recovery had this litigation proceeded. To compensate them for their efforts, the risk they undertook, and—most importantly—their results, Class Counsel respectfully request a fee at the Ninth Circuit's benchmark of 25% of the common fund, or $1,875,000, along with reimbursement of $20,591.19 in out-of-pocket expenses incurred in prosecuting the case.

The request accords with this Court's approval of a 25% fee in a TCPA class settlement in *Kramer v. Autobytel, Inc.,* No. 10-cv-02722-CW, 2012 U.S. Dist. LEXIS 185800, at *13-15 (N.D. Cal. Jan. 27, 2012). The class counsel in *Kramer* obtained $0.26 per class member and received a 2.7x lodestar multiplier. *Id.*; Pl.'s Notice Mot. & Mot. Preliminary Approval Class Action Settlement Agreement, *id.*, at CM/ECF p. 19 (filed July 18, 2011), ECF No. 121. Here, Class Counsel obtained $149 per class member and request a 3.0 lodestar multiplier, which is well within the range of reasonableness decided by this Court and the Ninth Circuit Court of Appeals.

1

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

Class Counsel also respectfully request that the Court approve a service award to Plaintiff in the amount of $10,000 for his work on behalf of the class. Plaintiff has actively participated in the case since before it was filed through to the present day. The same amount was approved six years ago in *Kramer*, 2012 U.S. Dist. LEXIS 185800, at *15. As shown below, only 1 in 7 million robocalls results in a federal TCPA lawsuit. Even those are concentrated in a small group of stalwart, veteran plaintiffs. When courts approve meaningful awards, they signal to other prospective class representatives that their participation is invited and will be recognized.

## II.    ISSUE TO BE DECIDED

Are a 25% fee award and $10,000 service payment reasonable in light of the outcome achieved: a common fund worth $149 per class member (not claimant) and total cessation of the challenged telemarketing by both defendants?

## III.    FACTUAL BACKGROUND

### A.    Statutory basis of the claims

The TCPA renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1).

These prohibitions apply to a seller of goods or services regardless of whether the seller makes the calls directly or hires marketing agents to do so on its behalf. The FCC has explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

### B.    The challenged telemarketing

The relevant factual background is summarized in Plaintiff's motion for class certification, filed under seal. *See* Dkt. No. 80-4 at CM/ECF pp. 12-19. In short, Total Merchant sold payment processing services through sales representatives such as Quality. *Id.* at CM/ECF p. 12. Under questioning from Class Counsel, Brian Alimento, Quality's head of day-to-day operations, testified that "99.9 percent of our deals were pitched as Total Merchant Services

1    because that was our primary and they are the first right of refusal." *Id*. He further testified that

2    between 98% and 100% of customers acquired by Quality were for Total Merchant. *Id*.

3         Through extensive discovery and depositions, Plaintiff's counsel established that Quality

4    performed its work by using a Spitfire dialer to place autodialed and prerecorded calls to people

5    who had not consented to receive them, *id.* at CM/ECF pp. 15, 22, that Quality did not subscribe

6    to the National Do Not Call Registry, *id.* at CM/ECF p. 15, and that Quality did not scrub

7    cellular telephone numbers from its calling lists, *id*.

8         Plaintiff alleges that Total Merchant was aware Quality was violating the TCPA but

9    continued its relationship with Quality nevertheless. *Id.* at CM/ECF pp. 15-17. Total Merchant

10   finally terminated Quality in mid-2018. *Id.* at CM/ECF p. 17.

11   **C.    Plaintiff's persistent investigation and litigation**

12        In his initial complaint, Plaintiff sued Total Merchant for unsolicited, prerecorded

13   telemarketing. Dkt. No. 1. Total Merchant answered the Complaint, asserting 20 affirmative

14   defenses. Dkt. No. 16. Investigation by Plaintiff's counsel identified another category of

15   unsolicited telemarketing by or on behalf of Total Merchant: unsolicited facsimile

16   advertisements. Plaintiff's counsel filed a First Amended Complaint of behalf of Plaintiff and a

17   new plaintiff, Dr. Timothy Collins, challenging both the robocalls and the junk faxes. Dkt. No.

18   22. When it answered the FAC, Total Merchant asserted 25 affirmative defenses. Dkt. No. 23.

19        The investigation continued. Plaintiff's counsel issued five subpoenas and conducted

20   witness interviews. Dkt. No. 92-6 ¶ 8. Plaintiff eventually identified the entity that had placed the

21   calls at issue: Quality. Plaintiff filed a Second Amended Complaint, naming Quality and its

22   founder, Michael Alimento, as additional defendants. Dkt. No. 41.

23        Getting Quality to comply with its requirements to participate in the litigation was an

24   uphill battle. Quality filed an untimely answer signed by Michael Alimento, Dkt. No. 48, who is

25   not an attorney. Plaintiff filed a motion to strike the answer, Dkt. No. 49, which the Court

26   granted, Dkt. No. 53.

27

28

Quality flat-out ignored the discovery propounded to it. Plaintiff filed a motion to compel responses. Dkt. No. 50. At the hearing on the motion, Quality and Michael Alimento were ordered to "produce all documents" within two weeks. Dkt. No. 61.

Plaintiff continued to pursue discovery from Quality and Michael Alimento, obtaining crucial calling records documenting the calls that they had placed, allegedly on Total Merchant's behalf. *See* Dkt. No. 82-18 (expert report of Anya Verkhovskaya analyzing these calling records). Plaintiff's expert determined that Quality had made 235,278 calls to 50,417 unique cellular telephone numbers. *Id.* at ¶ 22. Such calling records are crucial to prosecuting TCPA claims, which frequently fail without them. *E.g.*, *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011); *Levitt v. Fax.com*, No. 05-949, 2007 U.S. Dist. LEXIS 83143, at *4-5, 11-12 (D. Md. May 25, 2007).

With the calling records in hand, Class Counsel focused on one of the most challenging and important remaining pieces of the puzzle: proving Total Merchant's vicarious liability for Quality's telemarketing. Plaintiff propounded written discovery, obtaining relevant responses. *E.g.*, Dkt. No. 82-11 (Quality names Total Merchant employees with longstanding knowledge of Quality's "use of a dialer system"). After substantial meet-and-confer dialog was unable to resolve a dispute regarding discovery into the financial relationship between Total Merchant and Quality, Plaintiff filed a motion to compel, Dkt. No. 75, which was granted in relevant part, Dkt. No. 87. Plaintiff deposed both Michael Alimento and Brian Alimento (Michael Alimento's son) in Chicago. Dkt. Nos. 82-20, 82-21. Counsel for Total Merchant cross-examined the deponents. Dkt. Nos. 82-20, 82-21.

The parties litigated this action for over a year before commencing settlement negotiations. *See* Dkt. No. 92-6 ¶ 9. Not all years of litigation are created equal, and the first one in this case was particularly dense, culminating in a contested motion for class certification. Armed with approximately 60,000 pages of written documents and calling records, Paronich Decl. ¶ 8, and over 300 pages of deposition transcripts, Dkt. Nos. 82-20, 82-21, Plaintiff filed his motion—supported by 4 declarations and 18 exhibits. Dkt. Nos. 80, 82.

4

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

**D.** **Plaintiff secures classwide relief despite risks and challenges to continuing to litigate**

On July 24, 2018, the parties mediated with Peter Grilli, Esq. Dkt. No. 92-6 ¶ 9. Mr. Grilli has extensive experience mediating TCPA cases, including cases involving vicarious-liability allegations like this one. *Id.* Mr. Grilli challenged Plaintiff's counsel on the strength of Plaintiff's vicarious-liability theory and emphasized the risk Plaintiff faced if he continued to pursue the litigation. *Id.* at ¶ 10. The Parties exchanged proposals and counterproposals, but at the end of the day could not agree. *Id.* at ¶ 11. After several follow-up calls, the parties reached an agreement in principle, but it took several additional weeks to hammer out the details of the settlement agreement. *Id.* at ¶ 12.

On October 9, 2018, the Court held a hearing regarding preliminary approval of the Agreement. Dkt. No. 100. The Court provided its feedback to the Parties regarding the Agreement and the class notice and claims process contemplated thereby. Dkt. No. 101-2. The parties implemented the Court's improvements and then filed a Stipulation as to Changes to Class Action Settlement. Dkt. No. 101-1. On November 13, 2018, the Court granted preliminary approval of the settlement. Dkt. No. 102.

**E.** **Plaintiff's achievement of extraordinary legal and equitable relief for class members**

The settlement requires Total Merchant to pay $7,500,000 into a non-reversionary "Settlement Fund," Dkt. No. 92-1 § 4.1, i.e., $149 per class member, Dkt. No. 92 at CM/ECF p. 9:4. Each person who submits a valid claim form will receive a share of the Settlement Fund after deduction of settlement costs. Dkt. No. 92-1 § 4.3. Consistent with the statutory scheme, the amount each class member receives will be proportionate to the number of calls he or she received. *Compare* 47 U.S.C. § 227(b)(3)(B); *with* Dkt. No. 92-1 § 4.3(b). Class Counsel and the class action administrator have estimated that a claimant who received four calls—the average number of calls received by class members—will receive **$900**, depending on the claims rate. Birdsell Decl. ¶ 4.

In addition to this exceptional monetary relief, both Total Merchant and Quality have committed to stopping the core conduct alleged in this case: using automatic telephone dialing systems and/or artificial or prerecorded voice messages for telemarketing to cell phones without

the recipient's prior express written consent. Dkt. No. 101-1 at CM/ECF p. 2 ¶¶ 1-2.

Furthermore, Total Merchant has ended its relationship with Quality. Dkt. No. 92-1 § 4.2. As

shown below, people hate robocalls, and Plaintiff has put an end to this source of them.

## IV.     AUTHORITY AND ARGUMENT

**A.     The percentage-of-the-fund method is the right way to determine reasonable attorneys' fees here because the benefit to the class is easily quantified.**

It is well settled that "a lawyer who recovers a common fund for the benefit of persons

other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The "common fund" doctrine

"rests on the perception that persons who obtain the benefit of a lawsuit without contributing to

its cost are unjustly enriched at the successful litigant's expense." *Id.* "Jurisdiction over the fund

involved in the litigation allows a court to prevent this inequity by assessing attorney's fees

against the entire fund, thus spreading fees proportionately among those benefited by the suit."

*Id.* "Ninth Circuit jurisprudence" "permits the application of common fund principles where"

"the class of beneficiaries is identifiable and the benefits can be traced in order to allocate the

fees to the class." *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009).

"[T]hose who benefit from the creation of the fund should share the wealth with the lawyers

whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

1291, 1300 (9th Cir. 1994) (collecting cases).

"Under Ninth Circuit law, the district court has discretion in common fund cases to

choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*,

290 F.3d 1043, 1047 (9th Cir. 2002). "Though courts have discretion to choose which calculation

method they use, their discretion must be exercised so as to achieve a reasonable result." *In re

Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Despite this

discretion, use of the percentage method in common fund cases appears to be dominant." *In re

Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). That is so in part because "the

benefit to the class is easily quantified in common-fund settlements." *In re Bluetooth Headset

Prods. Liability Litig.*, 654 F.3d at 942.

6

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

The lodestar method, by contrast, is appropriate when the relief is "primarily injunctive in nature and thus not easily monetized." *Id.* at 941. Courts also use the lodestar method to determine a reasonable fee in cases involving a fee-shifting statute "such as federal civil rights, securities, antitrust, copyright, and patent acts." *Id.*

Courts have extolled the benefits of the percentage-of-the-fund method, particularly when compared to the inefficiencies created by the lodestar method. As one court explained, "a number of salutary effects can be achieved by [using the percentage method], including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989). "That is, in the common fund case, if a percentage-of-the-fund calculation controls, inefficiently expended hours only serve to reduce the per hour compensation of the attorney expending them." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993). Most critically, the percentage method aligns lawyers' interests with the interests of class members "in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

Leading commentators have likewise concluded that class members are best served by the percentage method. "[U]nder the percentage method, counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours to the minimum necessary to do the job effectively," notes the author of *Newberg on Class Actions*. William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (2008).

Moreover, the percentage method "helps ensure that the fee award will simulate marketplace rates, since most common fund cases are handled on a contingency basis." Alan Hirsch et al., Awarding Attorneys' Fees and Managing Fee Litigation 82 (3d ed. 2015). It also "provides incentives to plaintiff's counsel to settle the case early and avoid racking up litigation fees." *Id.* at 83. By contrast, "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a

1  reasonable fee, since the lodestar method does not reward early settlement" even if early

2  settlement would benefit the class. *Vizcaino*, 290 F.3d at 1050 n.5; *accord Wal-Mart Stores, Inc.*

3  *v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005).

4      Given the many advantages of the percentage method, "only about 10% of courts use a

5  pure lodestar method" to determine fees in common fund cases. William B. Rubenstein, 5

6  Newberg on Class Actions § 15:67 (5th ed. 2017). "The vast majority of fee awards during the

7  2009-2013 period were decided using the percentage method or the mixed method." Theodore

8  Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 945

9  (2017) "Today, the percentage method of calculating fees is explicitly the dominant method for

10  calculating fees." Task Force on Contingent Fees, Tort Trial and Insurance Practice Section of

11  the American Bar Association, *Report on Contingent Fees in Class Action Litigation*, 25 Rev.

12  Litig. 459, 472 (2006). "[T]he clear trend is away from the lodestar and all of the problems that

13  this method brings." *Id.* "After a period of experimentation with the lodestar method . . . the vast

14  majority of courts of appeal now permit or direct district courts to use the percentage-fee method

15  in common-fund cases." Manual for Complex Litigation, Fourth § 14.121 (2004) (footnotes

16  omitted).

17      Here, because the benefit to the class is easily quantified, the percentage-of-the-fund

18  method is the right way to determine a reasonable fee. Class Counsel's efforts resulted in a

19  $7,500,000 non-reversionary common fund for the benefit of the class members. Dkt. No. 92-1

20  §§ 4.1, 4.3. While Plaintiff is proud of having stopped the challenged telemarketing altogether,

21  he asks for no additional fees on account of that achievement, instead merely requesting a

22  percentage of the common fund. Using the percentage method in this case will recognize Class

23  Counsel's efficiency and their efforts to achieve the highest possible recovery for the class while

24  avoiding the risk that a verdict or appeal could leave class members empty-handed.

25  **B.     A fee award at the Ninth Circuit benchmark of 25% of the common fund will fairly
26          compensate Class Counsel for their work on behalf of the class**

27      The Ninth Circuit has instructed that 25% is "a proper benchmark" for common fund

28  fees, which commonly range from 20% to 30% of the fund. *In re Coordinated Pretrial*

8

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997). "[C]ourts typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *In re Bluetooth Headset Prods. Liability Litig*, 654 F.3d at 942 (quotation marks omitted). "[T]his Court has referred to the many cases in this circuit that have granted fee awards of 30% or more." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108, at *5 (N.D. Cal. Dec. 6, 2017) (quotation marks omitted). "[M]ore than 200 federal cases awarded fees higher than 30% as of 2005." *Id.* at *5 n.7.

Thus, the percentage may be adjusted up or down from 25% based on the court's consideration of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The relevant considerations include (1) the results achieved for the class, (2) the risk counsel assumed, (3) the skill required and the quality of the work, and (4) whether the fee is above or below the market rate. *Id.* at 1048-50. "The most important factor is the results achieved for the class." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at *6. That and the other factors confirm that an award at the benchmark of 25% is appropriate here.

### 1. Class Counsel achieved an excellent result for the class

Cognizant of the obstacles that could have prevented class members from recovering anything at all, Class Counsel set their sights on a resolution that would ensure that class members received financial compensation and that the allegedly unlawful calling cease. As described above, Class Counsel cleared a crucial hurdle by identifying Quality and causing it to participate in the litigation, which led to discovery of the telemarketing calls at issue and documents about the calling equipment used to make them. Class Counsel then focused on marshaling key evidence by serving discovery and collecting documents and testimony relating to Total Merchant's suspected vicarious liability. Using this information, Class Counsel retained an expert witness who identified the alleged violations. *See* Dkt. No. 82-18. Armed with her expert analysis, approximately 60,000 pages of written documents and calling records, Paronich Decl. ¶ 8, and over 300 pages of deposition transcripts, Dkt. Nos. 82-20, 82-21, Plaintiff filed his motion for class certification, supported by 4 declarations and 18 exhibits. Dkt. Nos. 80, 82.

9

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1    Class Counsel thereby entered mediation with Mr. Grilli from a position of strength, having

2    covered more ground in the first year of litigation than many, if not most, class actions.

3            The Parties ultimately agreed to a $7,500,000 settlement fund, worth $149 per class

4    member. Dkt. No. 92 at CM/ECF p. 9:4. If historical claim rates hold, the average claimant will

5    receive approximately $900, and those 272 class members receiving the most calls who make

6    claims will likely receive an award over $4,000 each and as high as $6,300. Birdsell Decl. ¶¶ 4-

7    6. Such results are extraordinary in consumer class actions, including TCPA class actions. Last

8    year, a majority of Class Counsel compiled a list of 70 TCPA class settlements in federal court,

9    which resulted in a median recovery of $15.53 per class member. Pl.'s Mot. Supp. Service

10   Award, Attorneys Fees, and Costs at CM/ECF p. 8 & Ex. 1, *Abante Rooter and Plumbing, Inc. v.*

11   *New York Life Ins. Co.*, Civil Action No. 1:16-cv-03588-BCM, ECF Nos. 34, 34-1 (S.D.N.Y.

12   June 23, 2017).

13           2.      Class Counsel assumed a significant risk of no recovery

14           The fee request is further supported by risks assumed by Class Counsel. *In re Online*

15   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1048-

16   49. Class Counsel faced a very real risk that they would not recover any of their fees and costs.

17   "Uncertainty that *any* recovery ultimately would be obtained is a highly relevant consideration.

18   Indeed, the risks assumed by [class counsel], particularly the risk of non-payment or

19   reimbursement of expenses, is important to determining a proper fee award." *Jenson v. First Tr.*

20   *Corp.*, No. 2:05-cv-03124-ABC-CT, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008)

21   (citations omitted).

22           Class Counsel represented Plaintiff and the class entirely on a contingent basis. "With

23   respect to the contingent nature of the litigation . . . courts tend to find above-market-value fee

24   awards more appropriate in this context given the need to encourage counsel to take on

25   contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees."

26   *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *60 (N.D. Cal.

27   Feb. 11, 2016) (citing *In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299). As this

28   Court has summarized:

> In short, contingent fees are good for clients and the public alike. In exchange for increased predictability, decreased bean counting, and unlimited protection against downside risks—including the risk of a zero dollar recovery—a client agrees to pay its attorneys an enhanced fee if and only if the client recovers. And because contingent fees are almost always determined as a percentage of the client's recovery, such fees are necessarily aligned with and proportional to the results achieved for that client—in short, the client only pays for what it gets. Lest contingent fees disappear altogether, the law must recognize both sides of the bargain— namely, a significant upside fee for successful contingent representations. If it instead becomes that lawyers must not only bear all of the downside risk but must also do so only for the prospect of being paid what they would have been paid by the hour, the law will discourage sophisticated counsel from pursuing risky representations on behalf of non-wealthy clients. . . .

> For instance, the fact that no money was coming in did not relieve class counsel from having to pay the salaries of the associates and staff working on this case, or from having to cover non-reimbursable overhead expenses like rent. Class counsel floated these expenses while assuming the risk that there might never be *any* repayment.

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at *10-11.

These risks are not merely hypothetical—Class Counsel have experienced them firsthand in other TCPA cases. *E.g.*, *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018) (granting motion to dismiss); *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018) (granting motion to dismiss); *Fabricant v. United Card Solutions LLC*, No. 2:18-cv-01429 (C.D. Cal. July 24, 2018), ECF No. 34 (denying class certification); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) (granting motion to dismiss); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014) (denying class certification); *Fitzhenry v. ADT Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) (denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, No. - JFM-11-718, 2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014) (denying

1  class certification); *Mey v. Pinnacle Sec., LLC*, Civil Action No. 5:11CV47, 2012 U.S. Dist.

2  LEXIS 129267 (N.D.W. Va. Sept. 12, 2012) (granting summary judgment).

3        Class Counsel's risk in this particular case was especially high, because the Ninth Circuit

4  recently affirmed dismissal of two TCPA cases, finding that the defendants could not be held

5  vicariously liable for telemarketing calls made by third parties. *Jones v. Royal Admin. Servs. Inc.*,

6  887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010 (9th Cir.

7  2018). While these cases are distinguishable, they demonstrate the risks faced by Class Counsel

8  in attempting to prove Total Merchant's vicarious liability for Quality's TCPA violations.

9        3.   <u>Class Counsel's skill and quality of work ensured a recovery for the class.</u>

10        Despite the challenges involved, Class Counsel were able to pursue this case effectively

11  because of their experience prosecuting TCPA class actions. Class Counsel have litigated dozens

12  of TCPA cases, achieving a successful outcome in many—but losing some. Dkt. No. 92-2 at

13  CM/ECF pp. 2-6; Dkt. No. 92-3 at CM/ECF pp. 2-3; Dkt. No. 92-4 at CM/ECF p. 2; Dkt. No.

14  92-5 at CM/ECF pp. 3-6; Dkt. No. 92-6 at CM/ECF pp. 2-5. This depth of experience with

15  TCPA claims and class action litigation allowed Class Counsel to position the case for successful

16  resolution, and to negotiate a settlement that capitalized on the claims' strengths while

17  eliminating the risks of continued litigation.

18        "The quality of opposing counsel is also relevant to the quality and skill that class

19  counsel provided." *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *59 (collecting cases). Total

20  Merchant's counsel was Greenspoon Marder, one of the leading TCPA defense firms in the

21  country. *See Beth-Ann E. Krimsky*, Super Lawyers (last visited Dec. 10, 2018),

22  https://profiles.superlawyers.com/florida/ft-lauderdale/lawyer/beth-ann-e-krimsky/b089bfda-

23  68cf-4243-997e-910534fa1239.html; Press Release, Greenspoon Marder, Greenspoon Marder

24  Law Attorney Beth-Ann Krimsky Honored As One of the Top 20 South Florida Women in Law

25  for 2015 (Aug. 10, 2015), https://www.gmlaw.com/news/greenspoon-marder-law-attorney-beth-

26  ann-krimsky-honored-as-one-of-the-top-20-south-florida-women-in-law-for-2015/. Total

27  Merchant's counsel indicated early in the litigation that they planned to aggressively challenge

28  Plaintiff's claims on the merits, including asserting 20—and then 25—affirmative defenses. Dkt.

Nos. 16, 23. The "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award. *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 U.S. Dist. LEXIS 186812, at *4 (N.D. Cal. May 27, 2016); *accord Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *16 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case, and were in a position to mount a vigorous defense," the favorable settlement was a "testament to Plaintiffs' counsel's skill").

4.    <u>Contingent awards in similar cases show that the requested fee is at market—or below market in light of the results achieved.</u>

Several courts in this circuit have exceeded the 25% benchmark when awarding fees in TCPA cases, even when the outcome was less favorable for the class than the one at bar. *E.g.*, *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *20 (N.D. Cal. Sept. 27, 2018) (30%). The *Gergetz* court surveyed the data and found an expected recovery of $810 to be "exceptionally good." *Id.* at *15. Here, the average settlement recovery is expected to be even higher—$900—and that estimate is based on a claim rate of 10%, versus approximately 1% in *Gergetz*. *Id.* at *9. In other words, if the claims rate here is what it was in *Gergetz*, the average class member's recovery here will be $9,000. Needless to say, the view of a settlement should not sour due to a relatively high claims rate.

The fee award in the *Gergetz* settlement wasn't unique. By one court's survey, most fee awards in TCPA settlements in the Ninth Circuit (14 of 25) were at the 25% benchmark or higher. *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2016 U.S. Dist. LEXIS 109417, at *8 (W.D. Wash. Aug. 16, 2016). Courts around the country have likewise awarded fees over 25% in TCPA settlements. *E.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343, at *52 (S.D.N.Y. Sept. 8, 2017) (awarding fee of 30% of $14.5 million settlement fund); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *5-6 (M.D. Fla. June 5, 2017) (awarding fee of 30% of $3.75 million settlement fund); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *53-56 (N.D. Ill. Aug. 29, 2016) (awarding fee of 30% of $12.1 million

13

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

settlement fund). Several courts have noted that the typical attorneys' fee award in a consumer case is 30% of the first $10 million recovered for the class. *E.g.*, *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 804 (N.D. Ill. 2015).

A fee award at the 25% benchmark is particularly appropriate in this case because it is not a case in which a "mega-fund" settlement would provide Class Counsel with a windfall. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942.

In sum, consideration of all the *Vizcaino* factors confirms that a fee award of 25% of the common fund is reasonable in this case.

## C. A lodestar crosscheck confirms that the requested fee is reasonable

In the Ninth Circuit, courts may use a rough calculation of the lodestar as a crosscheck to assess the reasonableness of an award based on the percentage method. *Vizcaino*, 290 F.3d at 1050. "Under this method, a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Then, that amount may be adjusted to account for several factors, such as the benefit obtained for the class, the risk of nonpayment, the complexity and novelty of the issues presented and awards in similar cases. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942. "Foremost among these considerations, however, is the benefit obtained for the class." *Id.*

### 1. Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience and reputation and within the range approved by this Court

"A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community." *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 182521, at *3 (N.D. Cal. Dec. 9, 2016) (citing *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

Class Counsel have provided the Court with declarations describing the basis for their hourly rates, including their education and experience. Paronich Decl. ¶¶ 19-21; Decl. Edward A. Broderick Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award ("Broderick Decl.") ¶¶ 6-

12; Decl. Matthew P. McCue Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award ("McCue Decl.") ¶¶ 6-12, 24-26; Decl. Jon B. Fougner Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award ("Fougner Decl.") ¶¶ 8-20, 29-34; Decl. Andrew W. Heidarpour Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award ("Heidarpour Decl.") ¶¶ 8-10, 16-18. These declarations include lists of class action cases in which courts have found Class Counsel's rates to be reasonable. Paronich Decl. ¶ 17; Broderick Decl. ¶ 3; McCue Decl. ¶ 23.

Class Counsel's rates are also consistent with those approved by this Court in awarding fees in other cases. In *Banerjee v. Avinger, Inc.*, the class counsel requested approval of hourly rates ranging from $400 to $995, Joint Decl. William C. Fredericks, Ex Kano S. Sams II, and Francis A. Bottini, Jr. Supp. Pl.'s Mot. Final Approval Class Action Settlement and Pl.'s Counsel's Mot. Award Attorneys' Fees and Expenses, Ex. A at CM/ECF pp. 6-7, No. 4:17-cv-03400-CW (N.D. Cal. Sept. 11, 2018), ECF No. 124-2, which the Court approved, 2018 U.S. Dist. LEXIS 184028, at *8-9 (N.D. Cal. Oct. 24, 2018). In *Rainbow Business Solutions v. MBF Leasing LLC*, the Court approved hourly rates of $275 to $950. No. 10-cv-01993-CW, 2017 U.S. Dist. LEXIS 200188, at *5-8 (N.D. Cal. Dec. 5, 2017). And in *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litigation*, the Court approved rates of $295 to $1035 and noted that "[a]ll of these rates are well within the range of $200 to $1,080 charged by attorneys in California in 2015, as shown by a reputable survey of billing rates." 2017 U.S. Dist. LEXIS 201108, at *20-21.

These rulings are consistent with the statewide jurisprudence and market data. A decade ago, surveys were already "showing hourly rates ranging from $775 to $950." *Laffitte v. Robert Half Int'l Inc.*, 180 Cal. Rptr. 3d 136, 152 (App. Div. 2d Dist. 2014). Thus, other courts in this district have approved rates equal to or greater than those sought here. For instance, in *Moore v. Verizon Communications Inc.*, counsel sought rates ranging from $550 to $825, Report and Recommendation re: Mot. Attorneys' Fees at 14:5, No. C 09-1823 SBA (N.D. Cal. Nov. 27, 2013), ECF No. 211, which the court approved as "reasonable given the geographic location and experience of counsel" despite the defendant's contention that much of the work billed at those rates amounted to "customer service" for class members, 2014 U.S. Dist. LEXIS 19145, at *15 & n.9 (N.D. Cal. Feb. 13, 2014). And in *Nwabueze v. AT&T, Inc.*, partners sought hourly rates of

1  $625 to $825, Supp'l Fee Decl. John G. Jacobs Resp. Court's Order November 27, 2013 at 12,

2  No. C 09-01529 SI (N.D. Cal. Dec. 12, 2013), ECF No. 248, which the court approved, 2014

3  U.S. Dist. LEXIS 11766, at *7-8 (N.D. Cal. Jan. 29, 2014).

4          2.   <u>Class Counsel expended a reasonable number of hours litigating the case.</u>

5          The number of hours that Class Counsel devoted to investigation, discovery, motion

6  practice and achieving a favorable settlement is reasonable. "Generally, hours are reasonable if

7  they were 'reasonably expended in pursuit of the ultimate result achieved in the same manner

8  that an attorney traditionally is compensated by a fee-paying client.'" *Villalpando*, 2016 U.S.

9  Dist. LEXIS 182521, at *3-4 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983)).

10          Class Counsel billed a total of 1,186.4 hours in litigating and settling this case. Paronich

11  Decl. ¶ 18; Broderick Decl. ¶ 4; McCue Decl. ¶ 22; Fougner Decl. ¶ 35; Heidarpour Decl. ¶ 19.

12  This total excludes time that Class Counsel removed as duplicative, administrative or arguably

13  excessive. Paronich Decl. ¶ 18; McCue Decl. ¶¶ 18-20; Fougner Decl. ¶¶ 21, 23-26; Heidarpour

14  Decl. ¶¶ 14-15. Class Counsel worked collaboratively, taking care to avoid duplication of effort

15  by dividing tasks according to each professional's skill, experience, and availability, both within

16  and amongst the firms. McCue Decl. ¶ 17; Fougner Decl. ¶ 23; Heidarpour Decl. ¶ 13. The

17  resulting hours are those that would be billed to a fee-paying client in a non-contingent case.

18  Paronich Decl. ¶ 18; McCue Decl. ¶ 22; Fougner Decl. ¶ 35; Heidarpour Decl. ¶ 19.

19          Class Counsel litigated this case efficiently from the filing of the complaint through

20  settlement. Class Counsel's experience in litigating TCPA cases allowed them to quickly home

21  in on the critical factual and legal issues and focus their discovery efforts on those issues. Those

22  key milestones included obtaining call logs from a party not known to them at the

23  commencement of the litigation (Quality), having those logs analyzed by an expert to establish

24  the requirements of Federal Rule of Civil Procedure 23, ferreting out evidence of Total

25  Merchant's vicarious liability for Quality's TCPA violations, filing an early and contested

26  motion for class certification, and ultimately achieving a settlement worth $149 per class

27  member (not claimant).

28

1        Those who have had the most opportunity to observe their work have found Class

2  Counsel to be efficient. Most of Class Counsel served on a lean team that prosecuted one of the

3  only jury trials of a certified TCPA class action in federal court. The result was a $61 million

4  award for the class. *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 U.S. Dist. LEXIS

5  203725, at *2 (M.D.N.C. Dec. 3, 2018). The court in that trial had extensive visibility into

6  counsel's skill and efficiency. It noted that Class Counsel had just two lawyers who handled all

7  witnesses and argument, three lawyers who supported the trial team, no paralegal and no

8  technical support staff. *Id.* at *15. The Court lauded that efficiency and approved a 33% fee

9  award, which equated to a 4.4 multiplier on a crosschecked lodestar. *Id.* at *15-16.

10        And the proof is in the pudding. In *Kramer*, the common fund per hour worked was

11  $4,450. *Kramer*, 2012 U.S. Dist. LEXIS 185800, at *13-14. Here, the common fund per hour

12  worked is $6,322—42% more efficient. That is, Class Counsel billed at less than one tenth of the

13  marginal productivity of their labor.

14       3.    <u>The requested multiplier is within the range endorsed by the Ninth Circuit and</u>
15            <u>less than that awarded in cases that have achieved *far* less recovery per class</u>
              <u>member</u>

16        "After determining the lodestar, the Court divides the total fees sought by the lodestar to

17  arrive at a multiplier." *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist.

18  LEXIS 16939, at *11 (N.D. Cal. Feb. 6, 2013). "The purpose of this multiplier is to account for

19  the risk Class Counsel assumes when they take on a contingent-fee cases." *Id.* Multipliers are

20  commonplace in attorneys' fee awards in class actions, especially when the lodestar method is

21  used to crosscheck a percentage-of-the-fund fee.

22               A contingent fee must be higher than a fee for the same legal
23               services paid as or after they are performed. The contingent fee
               compensates the lawyer not only for the legal services he renders
24               but for the loan of those services. The implicit interest rate on such
               a loan is high because the risk of default (the loss of the case,
25               which cancels the client's debt to the lawyer) is much higher than
               in the case of conventional loans, and the total amount of interest is
26               large not only because the interest rate is high but because the loan
27               may be outstanding for years—and with no periodic part payment,
               a device for reducing the risk borne by the ordinary lender.

28

Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011).

> A lawyer who both bears the risk of not being paid and provides
> legal services is not receiving the fair market value of his work if
> he is paid only for the second of these functions. If he is paid no
> more, competent counsel will be reluctant to accept fee award
> cases.

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981).

Courts approach multipliers differently when the lodestar method is used as a crosscheck rather than for fee-shifting. In fee-shifting cases, "the question of whether a multiplier is permitted is a question of statutory interpretation" and "courts are somewhat hesitant to make the shift broader than is necessary" since the adversary pays the fee. William B. Rubenstein, 5 Newberg on Class Actions § 15:91 (5th ed. Dec. 2017). On the other hand, "in common fund cases, courts that employ a pure lodestar method are not bound by the Supreme Court's rulings that limit multiplied lodestars in the fee-shifting context." *Id.*; *accord Vizcaino*, 290 F.3d at 1051 (noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").

"Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Vizcaino*, 290 F.3d at 1051 n.6. Courts in the Ninth Circuit and across the country have found multipliers at the top of that range—or well above it—appropriate when using the lodestar method as a crosscheck for an award based on the percentage method. *Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of 6.85 to be "well within the range of multipliers that courts have allowed" when crosschecking a fee based on a percentage of the fund); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *19-20 (N.D. Cal. May 11, 2018) (finding a 4.375 multiplier to be reasonable in crosschecking a fee of 25% of a settlement fund); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-DAD-JLT, 2017 U.S. Dist. LEXIS 194516, at *25 (E.D. Cal. Nov. 22, 2017) ("[A]warding attorneys' fees at a 25 percent benchmark of the common fund would yield a lodestar multiplier of 3.95, which is within the range of acceptable lodestar multipliers previously approved by this court and others."); *Hillson*

18

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 127717, at *14-16 (E.D. Mich. Aug. 11, 2017) (finding a multiplier of 4 to be reasonable); *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (finding a multiplier of 4.7 to be appropriate when crosschecking a fee of 25% of the settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("Finally, in 'cross-checking' the percentage fee against the lodestar-multiple, it clearly appears that the modest multiplier of 4.65 is fair and reasonable."); *Di Giacomo v. Plains All Am. Pipeline*, Nos. H-99-4137, H-99-4212, 2001 U.S. Dist. LEXIS 25532, at *32 (S.D. Tex. Dec. 18, 2001) (finding a multiplier of 5.3 appropriate when cross-checking a fee of 30% of the settlement fund); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (finding that a multiplier of "at least 3.6" (likely more) was "well within the acceptable range").

Courts may consider the following factors when assessing the reasonableness of a multiplier:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino*, 290 F.3d at 1051 (affirming a 3.65 multiplier when the district court had considered the *Kerr* factors). Application of these factors confirms that a multiplier of 3.0 is reasonable and appropriate in this case. Class Counsel took on the case on a contingent basis and to the preclusion of other work. They were able to achieve recovery per class member far greater than in most TCPA class settlements despite the challenges presented by this case—and with great efficiency. Class Counsel have substantial experience in litigating TCPA class actions and have earned reputations for skilled representation of victims of illegal telemarketing. The proposed multiplier is

19

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

particularly appropriate because Class Counsel request a fee at the Ninth Circuit's benchmark of 25% of the settlement.

As shown in the table below, the multiplier requested here is less than that awarded in TCPA settlements that have provided *far* less compensation per class member.

| Case | Recovery per class member (Here, it is $149.) | Awarded multiplier (Here, 3.0 is requested.) |
|---|---|---|
| *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1204-05, 1210 (C.D. Cal. 2014) | $58 | 2.6 x |
| *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 941, 950-51 (D. Minn. 2016) | $10 | 6.0 x |
| *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *13-14, 37 (N.D. Cal. Aug. 29, 2014) | $5 | 2.6 x |
| *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 787, 807 | $4 | 7.1 x |
| *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043-49 (S.D. Cal. 2015); Notice Mot. & Mot. Preliminary Approval Class Action Settlement & Certification Settlement Class at CM/ECF p. 9:9-10, *id.*, No. 12cv2484-MMA-BGS (S.D. Cal. Sept. 5, 2014), ECF No. 52-1 | $1.95 | 2.8 x |
| Joint Mot. Preliminary Approval Class Action Settlement; Mem. P&A Supp. Thereof at CM/ECF pp. 7:10, 23:8, *Adams v. AllianceOne*, Case 3:08-cv-00248-JAH-WVG (S.D. Cal. Feb. 24, 2012), ECF No. 109; Mem. P&A Supp. Pl.'s Mot Award Attorneys' Fees and Costs and Service Award Named Pls. at CM/ECF p. 27:12-13, *id.* (S.D. Cal. July 9, 2012), ECF No. 115-1; Order at CM/ECF p. 5, *id.* (S.D. Cal. Sept. 28, 2012), ECF No. 137 | $1.48 | 3.8 x |
| *Kramer*, 2012 U.S. Dist. LEXIS 185800, at *13-14; Pl.'s Notice Mot. & Mot. Preliminary Approval Class Action Settlement Agreement, *id.*, at CM/ECF p. 19:8-9 (N.D. Cal. July 18, 2011), ECF No. 121 | $0.26 | 2.7 x |

**D.**    **Class Counsel's litigation costs were necessarily and reasonably incurred**

Federal Rule of Civil Procedure 23(h) authorizes courts to award costs permitted by law or the parties' agreement. Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary and directly related to the work performed on behalf of the class. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-

20

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB (VBKx), 2016 U.S. Dist. LEXIS 46757, at *27 (C.D. Cal. Apr. 4, 2016). So are reimbursement for depositions and experts. *Hopkins*, 2013 U.S. Dist. LEXIS 16939, at *17-18. In this case, these costs total $24,176. Broderick Decl. ¶ 4; McCue Decl. ¶ 28; Fougner Decl. ¶ 36; Heidarpour Decl. ¶ 22. However, consistent with their promise to the Court and class members, Dkt. No. 92-1 at CM/ECF p. 56, Class Counsel request reimbursement of only $20,591.19. Class Counsel knew they might never be reimbursed any of these costs and were prudent and modest in their spending.

### E.   In light of his results, efforts and risk borne, a service award of $10,000 to Plaintiff is reasonable

Class representatives are eligible for reasonable service awards. Service awards "intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (quotation marks omitted). The awards recognize class representatives' time and effort, the financial and reputational risk they shoulder by sticking their necks out to bring the case, and the benefits they achieve for their fellow citizens as private attorneys general. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Courts also "balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *94 (N.D. Cal. Apr. 1, 2011) (quoting *Staton*, 327 F.3d at 977).

The fact is, extremely few people have the courage to serve as TCPA class representatives. In addition to the factors recognized by the Ninth Circuit in *West Publishing* and *Staton*, TCPA class representatives routinely face intimidating discovery tactics, such as demands for wholesale forensic imaging of their personal smartphones and computers. *E.g.*, *Sherman v. Yahoo! Inc.*, No. 13-CV-00041-GPC (WVG), 2015 U.S. Dist. LEXIS 192206, at *15-17 (S.D. Cal. Feb. 20, 2015) (granting, without addressing the privacy implications thereof,

21

NOTICE MOT. & MEM. P&A SUPP. PL.'S MOT. ATTORNEYS' FEES, COSTS AND SERVICE AWARD
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

forensic imaging of a TCPA class representative's personal cell phone). Whatever the reasons for consumers' hesitancy to enforce their rights, the result is that only *1 in 7 million* robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). In fact, access to justice is even more restricted than that ratio would suggest, because those cases are concentrated among an even smaller number of stalwart, veteran plaintiffs. The upshot is that the scourge of illegal telemarketing robocalls is only getting worse.[1] When courts authorize meaningful incentive awards to class representatives, they help address this problem and expand access to the courts—even for absent class members.

---

[1] "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

"The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

*The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html.

On July 4th, the *Wall Street Journal* offered advice on freeing oneself from robocalls. Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-hereswhat-you-can-do-about-them-1530610203.

Even more recently, a technology provider combating robocalls warned that nearly *half* of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of

Here, an excellent outcome of $149 per class member (let alone the much higher recovery per claimant) was achieved by a single class representative and his counsel. Given that dozens of absent class members are expected to receive approximately $4,000 each, Birdsell Decl. ¶¶ 4-5, a payment of roughly twice that amount to the person without whom they all would be receiving nothing is hardly extravagant under *Staton*'s proportionality test.

Mr. Naiman expended considerable effort in his role as class representative. He received and documented the illegal call from Quality. Decl. Sidney Naiman ¶ 2. He worked with Class Counsel to gather and review the relevant call records, personally going to the phone store to retrieve them. *Id.* at ¶¶ 3-4. Such records are critical in TCPA cases and most people don't take time out of their day to preserve and organize them. More importantly, he was prepared to endure both a deposition and potentially invasive discovery requests, *id.* at ¶¶ 4-5—daunting prospects that scare many people away from bringing cases, let alone from serving as representatives in high-stakes class actions. He is passionate about stopping illegal spam, whether or not there is any money in it for him. *Id.* at ¶¶ 6-7. Still, an incentive payment is a tangible way to let him participate in the value he created for others. Ultimately, and most importantly, he helped secure an outcome for fellow class members that is more than ten times better than that achieved in the typical TCPA class settlement. *Id.* at ¶ 8.

## V.   CONCLUSION

Having achieved an extraordinary result of $149 per class member, Class Counsel respectfully request that the Court approve a fee award at the Ninth Circuit's 25% benchmark, or $1,875,000, reimbursement of frugal out-of-pocket costs of $20,591.19 and a service award of $10,000.

## VI.   SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

---

U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018),
https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

Notice Mot. & Mem. P&A Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1    RESPECTFULLY SUBMITTED AND DATED on December 13, 2018.

2

3                                    By: *Jon B. Fougner*

4                                    Anthony I. Paronich, *Admitted Pro Hac Vice*
                                     anthony@broderick-law.com
5                                    Edward A. Broderick, *Admitted Pro Hac Vice*
                                     BRODERICK & PARONICH, P.C.
6                                    99 High Street, Suite 304
                                     Boston, Massachusetts 02110
7                                    Telephone: (617) 738-7080
                                     Facsimile:  (617) 830-0327
8

9                                    Matthew P. McCue, *Admitted Pro Hac Vice*
                                     mmccue@massattorneys.net
10                                   THE LAW OFFICE OF MATTHEW P. McCUE
                                     1 South Avenue, Suite 3
11                                   Natick, Massachusetts 01760
                                     Telephone: (508) 655-1415
12                                   Facsimile:  (508) 319-3077

13

14                                   Andrew W. Heidarpour, *Admitted Pro Hac Vice*
                                     AHeidarpour@HLFirm.com
15                                   HEIDARPOUR LAW FIRM, PPC
                                     1300 Pennsylvania Ave. NW, 190-318
16                                   Washington, DC 20004
                                     Telephone: (202) 234-2727
17

18                                   *Attorneys for Plaintiff Sidney Naiman and the*
                                     *Settlement Class*
19

20

21

22

23

24

25

26

27

28

Notice Mot. & Mem. P&A Supp. Pl.'s Mot. Attorneys' Fees, Costs and Service Award
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW