Jon B. Fougner (State Bar No. 314097)
jon@FougnerLaw.com
600 California Street, 11th Floor
San Francisco, California 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

Anthony I. Paronich, *Admitted Pro Hac Vice*
anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (508) 221-1510
Facsimile: (617) 830-0327

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Sidney Naiman and the Settlement Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SIDNEY NAIMAN, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br>   v.<br><br>TOTAL MERCHANT SERVICES, INC. and QUALITY MERCHANT SERVICES, INC.,<br><br>          Defendants. | NO.  4:17-cv-03806-CW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed:  July 5, 2017<br><br>**DATE**:     April 2, 2019<br><br>**TIME**:     2:30 p.m.<br><br>**LOCATION**: Courtroom 6 – 2nd Floor, 1301 Clay St., Oakland, CA 94612 |

1  TO:     THE CLERK OF THE COURT; and

2  TO:     DEFENDANTS TOTAL MERCHANT SERVICES, INC. and QUALITY MERCHANT

3          SERVICES, INC. and THEIR ATTORNEYS OF RECORD:

4

5          PLEASE TAKE NOTICE that on April 2, 2019, at 2:30 p.m., in Courtroom 6, 2nd Floor

6  of the United States District Court for the Northern District of California, 1301 Clay St.,

7  Oakland, California 94612, Plaintiff will move for final approval of a class action settlement.

8          This motion will be based on: this Notice of Motion, the following Memorandum of

9  Points and Authorities, the Declaration of Cameron R. Azari, the records and file in this action,

10  and such other matter as may be presented before or at the hearing of the motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    1. Statutory basis of the claims ......................................................................... 2

    2. The challenged telemarketing ....................................................................... 2

    3. Plaintiff's investigation and litigation........................................................... 3

    4. The settlement ............................................................................................... 4

    5. Legal and equitable relief obtained for class members.................................. 5

    6. The narrowly tailored release ........................................................................ 5

III. ISSUE TO BE DECIDED ..................................................................................... 5

IV.  ARGUMENT AND AUTHORITY ....................................................................... 5

    A. The settlement satisfies the criteria for final approval. ................................. 6

        1. The strength of Plaintiff's case .................................................................. 6

        2. The risk, expense, complexity and likely duration of further litigation................... 7

        3. The risk of maintaining class-action status through trial .......................... 9

        4. The amount offered in settlement .............................................................. 9

        5. The extent of discovery completed and the stage of the proceedings................ 10

        6. The presence of a government participant. ................................................ 11

        7. The experience of counsel supports final approval................................... 11

        8. Class members' reaction supports final approval .................................... 11

    B. The settlement is the product of arm's-length negotiations. ....................... 13

    C. The notice program complied with Rule 23 and due process. .................... 13

    D. The Class should be finally certified for settlement purposes. ................... 15

    E. Class Counsel's request for an award of attorneys' fees should be granted. .............. 16

V.   CONCLUSION.................................................................................................... 17

i

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
Case 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012), ECF No. 137 ............................10

*Bayat v. Bank of the W., No. C-13-2376 EMC*,
2015 U.S. Dist. LEXIS 50416 (N.D. Cal. Apr. 15, 2015) ........................................................9

*Betorina v. Randstad US, L.P.*,
No. 15-cv-03646-EMC, 2017 U.S. Dist. LEXIS 53317 (N.D. Cal. Apr. 6,
2017) ........................................................................................................................................13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................................13

*In re Capital One TCPA Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ..........................................................................................9

*Celano v. Marriott Int'l Inc.*,
242 F.R.D. 544 (N.D. Cal. 2007).............................................................................................15

*Chavez v. PVH Corp.*,
No. 13-CV-01797-LHK, 2015 U.S. Dist. LEXIS 17511 (N.D. Cal. Feb. 11,
2015) ........................................................................................................................................14

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ......................................................................................9

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................................12

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .................................................................................................13

*Custom LED, LLC v. eBay, Inc.*,
No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180 (N.D. Cal. June 24,
2014) ..........................................................................................................................................9

*In re Dish Network, LLC*,
28 FCC Rcd. 6574 (2013) ................................................................................................2, 3, 4

*Donaca v. Dish Network, LLC*,
303 F.R.D. 390 (D. Colo. 2014) ................................................................................................7

ii

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*Dyer v. Wells Fargo Bank, N.A., No. 13-cv-02858-JST*,
  2014 U.S. Dist. LEXIS 65199 (N.D. Cal. May 12, 2014) ...................................................... 9

*Fabricant v. United Card Solutions LLC*,
  No. 2:18-cv-01429, ECF No. 34 (C.D. Cal. July 25, 2018) .................................................... 7

*Fitzhenry v. ADT Corp.*,
  No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243
  (S.D. Fla. Nov. 3, 2014)....................................................................................................... 7

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016)........................................................................................... 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ......................................................................................... 6, 9

*Hawthorne v. Umpqua Bank, No. 11-cv-06700-JST*,
  2014 U.S. Dist. LEXIS 129713 (N.D. Cal. Sep. 15, 2014) ................................................ 14

*In re High-Tech Emp. Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013).................................................. 13

*Jones v. Royal Admin. Servs. Inc.*,
  887 F.3d 443 (9th Cir. 2018) .............................................................................................. 7

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ............................................................................................. 12

*Knight v. Red Door Salons, Inc., No. 08-01520 SC*,
  2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ..................................................... 11

*Krakauer v. Dish Network, L.L.C.*,
  No. 1:14-CV-333, 2018 U.S. Dist. LEXIS 203725 (M.D.N.C. Dec. 3, 2018) ......................... 8

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014)................................................................................... 15

*Kristensen v. Credit Payment Servs.*,
  879 F.3d 1010 (9th Cir. 2018) ............................................................................................. 7

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ........................................................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................................. 10

*Moore v. Verizon Commc'ns., Inc.*,
  No. C 09-1823.................................................................................................................... 12

iii

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).................................................................13

*Naiman v. TranzVia LLC, No. 17-cv-4813-PJH*,
  2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017)........................7

*Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)..............................................8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)...............................................6, 12

*Pelletz v. Weyerhaeuser Co.*,
  255 F.R.D. 537 (W.D. Wash. 2009)..........................................12

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007)......................................12

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015)..........................................12

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)..............................................6, 8

*Steinfeld v. Discover Fin. Servs.*,
  No. 12-01118 JSW (N.D. Cal. Mar. 10, 2014), ECF No. 96..................10

*Steinfeld v. Discover Fin. Servs.*,
  No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31,
  2014)......................................................................9

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)..............................................5

*Tadepalli v. Uber Techs., Inc.*,
  No. 15-cv-04348-MEJ, 2016 U.S. Dist. LEXIS 55014 (N.D. Cal. Apr. 25,
  2016)......................................................................12

*Touhey v. United States*,
  No. EDCV 08-01418-VAP, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. July 25,
  2011)......................................................................12

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV 15-2171 FMO, 2017 U.S. Dist. LEXIS 77576 (C.D. Cal. May 21,
  2017)......................................................................12

*Whitaker v. Bennett Law, PLLC*,
    No. 13-cv-3145-L(NLS), 2014 U.S. Dist. LEXIS 152099 (S.D. Cal. Oct. 27,
    2014) ............................................................................................................................15, 16

**Statutes**

47 U.S.C. § 227(b)(1) ...............................................................................................2

TCPA ................................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................13

Fed. R. Civ. P. 23(e) .................................................................................................6

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................13

Fed. R. Civ. P. 23(e)(2) ............................................................................................6

**Other**

Located at www. TotalTCPASettlement.com ..........................................................14

# I.  INTRODUCTION

Sidney Naiman moves for final approval of this $7,500,000 non-reversionary settlement. Presented with extraordinary relief averaging $1,198 per claimant, ***zero class members have objected to any portion of the settlement***. *See* <u>Exhibit 1</u>, Decl. Cameron R. Azari Implementation and Adequacy Notice Plan ("Azari Decl.") ¶ 24. Of the 51,035 identified class members, 4,424 have filed valid claims, for a notable 9% claims rate. *Id.* at ¶ 25.

The Court granted preliminary approval of the settlement on November 13, 2018. Dkt. No. 102. The settlement administrator, Epiq, mailed notice to class members by first class mail. Azari Decl. ¶ 15. Class members have now had an opportunity to consider the settlement and choose whether to file a claim to receive a portion of the settlement fund, object to the settlement or to opt out. All of the factors that courts consider support final approval of the settlement. Continued litigation is risky given the challenges Mr. Naiman ("Plaintiff") faces in proving vicarious liability and may result in nothing at all for class members. The settlement ensures that class members are compensated without delay and eliminates the risks of class certification, summary judgment, trial, appeals and satisfaction of judgment. The parties devoted sufficient time to discovery and Plaintiff had a motion for class certification pending before negotiating the settlement with the assistance of an experienced mediator. Dkt. No. 92-6 ¶¶ 9-12. Furthermore, class counsel, who have successfully litigated many Telephone Consumer Protection Act ("TCPA") cases, fully support the settlement. *E.g.*, *id.* at ¶ 17. The fact that no class members objected to the settlement further supports final approval.

Plaintiff therefore requests that the Court finally certify the settlement class for settlement purposes and finally approve the $7.5 million non-reversionary settlement as fair, reasonable and adequate.

1

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

## II.  BACKGROUND

1.     <u>Statutory basis of the claims</u>

The TCPA renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1).

These prohibitions apply to a seller of goods or services regardless of whether the seller makes the calls directly or hires marketing agents to do so. The FCC has explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

2.     <u>The challenged telemarketing</u>

The relevant factual background is summarized in Plaintiff's motion for class certification, filed under seal. Dkt. No. 80-4 at 12-19.[1] In short, Defendant Total Merchant Services, Inc. ("Total Merchant" or "TMS") sells its payment processing services through sales representatives such as Defendant Quality Merchant Services, Inc. ("Quality" or "Quality Merchant"). *Id.* at 12. Since shortly after its founding in 2009, Quality was one of TMS's sales representatives. *Id.* Brian Alimento, Quality's head of day-to-day operations, testified that "99.9 percent of our deals were pitched as Total Merchant Services because that was our primary and they are the first right of refusal." *Id.* (citing Dkt. No. 80-17 at 137:8-9, 139:10-13). He testified that between 98% and 100% of customers acquired by Quality were for TMS. *Id.* (citing Dkt. No. 80-17 at 51:4-6).

Quality performed its work for TMS by using a Spitfire dialer to place autodialed and prerecorded calls to people who had not consented to receive them. *Id.* at 15, 22. Quality did not subscribe to the National Do Not Call Registry. *Id.* at 15 (citing Dkt. No. 80-17 at 75:13-15).

---

[1] Herein, pincites to documents with CM/ECF headers are to the page numbers in those headers.

2

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1  Quality did not scrub cellular telephone numbers from its calling lists. *Id.* (citing Dkt. No. 80-17
2  at 75:16-19).

3        Plaintiff alleges that Total Merchant knew Quality was violating the TCPA but continued
4  its relationship with QMS nevertheless. *Id.* at 15-17. Total Merchant finally terminated Quality
5  in mid-2018. *Id.* at 17 (citing Dkt. No. 80-17 at 259:7-14, 260:13-17).

6        Plaintiff's class claims cover the automated telemarketing calls Quality made on behalf of
7  TMS from July 5, 2013 through June 8, 2018.

8          3.    <u>Plaintiff's investigation and litigation</u>

9        In his initial complaint, Plaintiff sued Total Merchant for unsolicited, prerecorded
10  telemarketing. Dkt. No. 1. TMS answered the Complaint, asserting 20 affirmative defenses. Dkt.
11  No. 16. Investigation by Plaintiff's counsel identified another category of unsolicited
12  telemarketing by or on behalf of TMS: unsolicited facsimile advertisements. Plaintiff's counsel
13  filed a first amended complaint of behalf of Plaintiff and a new plaintiff, Dr. Timothy Collins,
14  challenging both the robocalls and the junk faxes. Dkt. No. 22. When it answered this time, TMS
15  asserted 25 affirmative defenses. Dkt. No. 23.

16        The investigation continued. Plaintiff's counsel issued five subpoenas and conducted
17  witness interviews. Dkt. No. 92-6 ¶ 8. Plaintiff eventually identified the entity that had placed the
18  calls at issue: Quality Merchant. Plaintiff filed a second amended complaint, naming Quality and
19  its founder, Michael Alimento, as additional defendants. Dkt. No. 41.

20        Getting Quality to comply with its requirements to participate in the litigation was an
21  uphill battle. Quality filed an untimely answer signed by Michael Alimento, who is not an
22  attorney. Dkt. No. 48. Plaintiff filed a motion to strike the answer, Dkt. No. 49, which the Court
23  granted, Dkt. No. 53. Quality then simply ignored the discovery propounded to it. Plaintiff filed a
24  motion to compel responses. Dkt. No. 50. At the hearing on the motion, Quality and Michael
25  Alimento were ordered to "produce all documents" within two weeks. Dkt. No. 61.

26        Plaintiff continued to pursue discovery from Quality and Michael Alimento, obtaining
27  crucial calling records documenting the calls that they had placed, allegedly on Total Merchant's
28  behalf. Dkt. No. 82-18. Plaintiff's expert determined that Quality had made 235,278 calls to

1  50,417 unique cellular telephone numbers. *Id.* at ¶ 22. Such calling records are crucial in TCPA

2  class actions, which frequently fail without them.

3        With the calling records in hand, Plaintiff's counsel focused on one of the most

4  challenging and important remaining pieces of the puzzle: proving Total Merchant's vicarious

5  liability for Quality's telemarketing. To that end, Plaintiff propounded written discovery,

6  obtaining relevant responses. *E.g.*, Dkt. No. 82-11. After substantial meet-and-confer dialog was

7  unable to resolve a dispute regarding discovery into the financial relationship between Total

8  Merchant and Quality, Plaintiff filed a motion to compel, Dkt. No. 75, which was granted in

9  relevant part, Dkt. No. 87. Plaintiff deposed both Michael Alimento and Brian Alimento

10  (Michael Alimento's son) in Chicago. Dkt. Nos. 82-20, 82-21. Counsel for Total Merchant cross-

11  examined the deponents.

12        The parties litigated this action for over a year before commencing settlement

13  negotiations. Not all years of litigation are created equal, and the first one in this case was

14  particularly dense, culminating in a motion for class certification filed well before the deadline.

15  Armed with approximately 60,000 pages of written documents and calling records and over 300

16  pages of deposition transcripts, Plaintiff filed his motion, supported by 4 declarations and 18

17  exhibits. Dkt. Nos. 80, 82.

18        4.   <u>The settlement</u>

19        On July 24, 2018, the parties mediated with Peter Grilli, Esq. Mr. Grilli has extensive

20  experience mediating TCPA cases, including cases involving vicarious liability allegations like

21  those in this case. Dkt. No. 92-6 ¶ 9. Mr. Grilli challenged Plaintiff's counsel on the strength of

22  Plaintiff's vicarious liability theory and emphasized the risk Plaintiff faced if he continued to

23  pursue the litigation. *Id.* at ¶ 10. The parties exchanged proposals and counterproposals, but at

24  the end of the day could not agree. *Id.* at ¶ 11. After multiple follow-up calls, the parties reached

25  an agreement in principle, but it took several additional weeks to hammer out the details of the

26  settlement agreement. *Id.* at ¶ 12. On October 9, 2018, the Court held a hearing regarding

27  preliminary approval of the settlement agreement. The Court provided its feedback to the parties

28  regarding the agreement and the class notice and claims process contemplated thereby. The

parties then filed a Stipulation of Changes as the Class Action Settlement Agreement. Dkt. No. 101-1. On November 13, 2018, the Court granted preliminary approval of the settlement. Dkt. No. 102.

### 5. Legal and equitable relief obtained for class members

The settlement requires Total Merchant to pay $7,500,000 into a non-reversionary settlement fund. Dkt. No. 92-1 § 4.1. As a result of the 9% claim rate and average of 5.3 calls per claimant, claimants are expected to receive approximately $1,198 each, representing $227 per call. Azari Decl. ¶ 25.

In addition to the monetary relief offered by the settlement, both Total Merchant and Quality have committed to stopping (to the extent they started) the core misconduct alleged in this case: using automatic telephone dialing systems and/or artificial or prerecorded voice messages to contact cellular telephones for telemarketing purposes without the recipient's prior express written consent. Dkt. No. 101-1 at 2. Furthermore, Total Merchant has ended its relationship with Quality. Dkt. No. 92-1 § 4.2. Robocalls are a scourge, and Plaintiff has put an end to this source of them.

### 6. The narrowly tailored release

In exchange for this meaningful individual and public-wide relief, class members are providing only a narrowly tailored release. Claims are released only if they arise from calls made by QMS or the Alimentos using the Spitfire dialer to promote TMS. Dkt. No. 101-1 ¶¶ 9-10.

## III.  ISSUE TO BE DECIDED

Should the $7.5 million non-reversionary settlement, representing actual payouts averaging approximately $1,198 per claimant, be finally approved as fair, reasonable and adequate in this TCPA class action?

## IV.  ARGUMENT AND AUTHORITY

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) . Courts need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

5

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1   avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez v.*
2   *West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009).

3       Proposed class action settlements are not effective unless approved by the Court. Fed. R.
4   Civ. P. 23(e). There is a three-step procedure for approval: (1) preliminary approval of the
5   settlement; (2) dissemination of notice of the settlement to class members; and (3) a "fairness
6   hearing" at which class members may be heard and evidence and argument concerning the
7   fairness, adequacy, and reasonableness of the settlement may be presented. Manual for Complex
8   Litigation, Fourth §§ 21.632-21.634 (2004). The first two stages are complete. Dkt. No. 102;
9   Azari Decl. ¶¶ 13-23. The Court must now determine whether the settlement is "fundamentally
10   fair, adequate and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988);
11   Fed. R. Civ. P. 23(e)(2).

12   **A.**     **The settlement satisfies the criteria for final approval.**

13       The Ninth Circuit has established a list of factors for courts to consider when evaluating
14   whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiff's
15   case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of
16   maintaining class action status throughout the trial; (4) the benefits offered in the settlement;
17   (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and
18   views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class
19   members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,
20   942, 944 (9th Cir. 2015). Each of these factors supports approval of the proposed settlement.

21       1.    The strength of Plaintiff's case

22       Plaintiff believes he has a strong case. Plaintiff obtained testimony from Quality's
23   founder, who asserted that Total Merchant was aware of its business plan to use pre-recorded
24   messages asking individuals if they were interested in Total Merchant's payment processing and
25   merchant account services, and that the pre-recorded telemarketing campaign made calls using
26   an automatic telephone dialing system. Dkt. No. 82-11. Brian Alimento testified that these cold
27   calls targeted businesses and that Quality lacked any evidence that any of the recipients of the
28   calls had consented to receiving them. *See* Dkt. No. 80-17 at 87:5-9, 93:4-24 (Quality simply

6

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1  purchased cold leads from Salesgenie, generally on TMS's dime.) Plaintiff also obtained

2  documents and written discovery from Total Merchant relating to its alleged business practices

3  and its relationship and interaction with Quality. *See generally* Dkt. No. 80 (attaching such

4  documents under seal). Plaintiff believes these depositions and documents supported his claims.

5        Although Plaintiff believes he has a very strong case for Quality's direct liability and a

6  strong case for Total Merchant's vicarious liability, proving that Total Merchant is vicariously

7  liable for Quality's telemarketing presents significant challenges and creates a very real risk of

8  no recovery at all. The risk is particularly high in this case because the Ninth Circuit recently

9  affirmed summary dismissal of two TCPA cases, finding that the defendants could not be held

10  vicariously liable for telemarketing calls made by third parties. *Jones v. Royal Admin. Servs. Inc.*,

11  887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir.

12  2018). In fact, Mr. Naiman was the plaintiff in another TCPA case where the court granted a

13  motion to dismiss on vicarious-liability grounds. *Naiman v. TranzVia LLC, No. 17-cv-4813-PJH*,

14  2017 U.S. Dist. LEXIS 199131, at *16-39 (N.D. Cal. Dec. 4, 2017). While there are ways to

15  distinguish these cases, they demonstrate the challenges in proving Total Merchant's vicarious

16  liability for its telemarketers' TCPA violations.

17        2.    The risk, expense, complexity and likely duration of further litigation

18        Litigating this case to trial would be both expensive and risky. Discovery was in

19  advanced stages but still needed to be completed when the parties negotiated the settlement.

20  Should litigation continued, it is very likely that Total Merchant will move for summary

21  judgment, at which stage it may persuade the Court that it should not be held vicariously liable

22  for the alleged telemarketing violations.

23        Additionally, Total Merchant would have opposed the Plaintiff's motion for class

24  certification. Motions for class certification are far from automatic in TCPA cases. *E.g.*,

25  *Fabricant v. United Card Solutions LLC,* No. 2:18-cv-01429, ECF No. 34 (C.D. Cal. July 25,

26  2018) (denying class certification in TCPA case); *Donaca v. Dish Network, LLC.*, 303 F.R.D.

27  390, 396-402 (D. Colo. 2014) (same); *Fitzhenry v. ADT Corp.*, No. 14-80180-

28  MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) (same).

7

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1  Even if Plaintiff could overcome the pretrial risks that remain, he would still need to

2  prevail at trial. Trials are always risky. It is not that Plaintiff's counsel are unwilling or unable to

3  try TCPA class actions to juries in federal court. Several of them recently did just that, as

4  members of the trial team representing more than 18,000 class members in a single, six-day trial

5  against Dish Network. *Krakauer v. Dish Network, L.L.C*., No. 1:14-CV-333, 2018 U.S. Dist.

6  LEXIS 203725, at *3, 9 (M.D.N.C. Dec. 3, 2018). The result was a jury verdict in favor of the

7  class, trebled by the court to $61 million, or $3,000 per class member. *Id.* at *9-10. The court

8  found:

> Regardless of the underlying subject matter, it takes skilled counsel
> to successfully manage an 18,000-plus member class action. It
> takes a different set of highly developed skills to successfully
> achieve a jury verdict. Class Counsel here is particularly
> experienced and skilled in TCPA litigation, having settled
> numerous TCPA class actions including acting as co-lead counsel
> in a multidistrict TCPA case. Class Counsel also successfully
> litigated complicated questions involving standing, class
> certification, agency, and res judicata in this matter.

15  *Id.* at *9 (citations omitted). Notwithstanding this past success, Plaintiff's counsel are keenly

16  aware of the hazards of trying TCPA class actions.

17  If successful at trial, Plaintiff would then have to prevail on an inevitable appeal that

18  could take several years. The TCPA is subject to considerable swings in jurisprudence and FCC

19  rulemaking, and there is a possibility that any such changes during the pendency of the appeal

20  would have retroactive effects adverse to the class.

21  Finally, Plaintiff would have to obtain satisfaction of a classwide judgment.

22  The settlement avoids all of those delays and risks. *See Rodriguez*, 563 F.3d at 966; *Nat'l*

23  *Rural Telecommc'ns Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court

24  shall consider the vagaries of litigation and compare the significance of immediate recovery by

25  way of the compromise to the mere possibility of relief in the future, after protracted and

26  expensive litigation.").

27

28

3.   The risk of maintaining class-action status through trial

"[C]ourts have previously granted approval to TCPA class action settlements precisely because certification of such actions is a risky endeavor." *Bayat v. Bank of the W., No. C-13-2376 EMC*, 2015 U.S. Dist. LEXIS 50416, at *12 (N.D. Cal. Apr. 15, 2015). Even if Plaintiff's pending motion for class certification is granted, there is a risk that Total Merchant might later succeed in moving to decertify. These risks support approval. *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180, at *13 (N.D. Cal. June 24, 2014); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

4.   The amount offered in settlement

"Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer v. Wells Fargo Bank, N.A., No. 13-cv-02858-JST*, 2014 U.S. Dist. LEXIS 65199, at *16 (N.D. Cal. May 12, 2014).

Given the costs, risks, and delay of further litigation, the settlement offers class members exceptional legal relief. Total Merchant has agreed to pay $7,500,000 to settle Plaintiff's classwide claims. Dkt. No. 92-1 § 4.1. The settlement fund will be used to pay the costs of notice and settlement administration, attorneys' fees and costs, and a service award to Plaintiff. The remainder will be distributed to all class members who submitted a valid claim form. If the Court awards the requested attorneys' fee and service award, the approximately 4,424 valid claimants will receive an average cash payment of $1,198, or $227 per phone call. Azari Decl. ¶ 25. Plaintiff has demonstrated how extraordinary the relief provided is. Dkt. No. 103 at 28. These amounts vastly exceed the settlement payments in most TCPA cases. *E.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving TCPA settlement estimated to provide $52.50 per *claimant); In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving TCPA settlement estimated to provide $34.60 per *claimant*); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855, at *21 (N.D. Cal.

9

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

Mar. 31, 2014) (approving TCPA settlement estimated to provide $46.98[2] per *claimant*); Order, *Adams v. AllianceOne Receivables Mgmt., Inc.*, Case 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012), ECF No. 137 (approving TCPA settlement providing a maximum of $40[3] per *claimant*). Mr. Naiman's outperformance on a per-claimant basis is all the more noteworthy in light of the exceptionally high claim rate of 9%, but for which the per-claimant recovery would be even higher. Class members have voted with, and for, their wallets.

The proposed settlement is reasonable and of fair value given the significant litigation risks Plaintiff faces in continuing to litigate. The amounts are also reasonable given the high litigation costs and fees that would likely engulf any amounts class members could recoup if they litigated their claims on an individual basis, as the TCPA does not provide for fee-shifting. The costs of obtaining discovery from Total Merchant, including litigating the vicarious liability issue, hiring an expert to opine on whether the calling equipment constitutes an automatic telephone dialing system under the TCPA and proving their entitlement to damages would quickly exceed an individual class member's potential recovery.

5.      The extent of discovery completed and the stage of the proceedings

A class representative settling his case classwide should have sufficient information to make an informed decision on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Cognizant of the challenges of this litigation that could have prevented class members from recovering anything, Class Counsel set their sights on a resolution that would ensure class members received financial compensation for their injuries. They cleared a crucial hurdle by identifying Quality and causing it to participate in the litigation, which led to discovery of the telemarketing calls at issue and documents about the calling equipment used to make them. Class Counsel then focused on marshaling key evidence by serving discovery and collecting documents and obtaining testimony relating to Total Merchant's potential vicarious

---

[2] Supp'l Decl. Jonathan D. Carameros re: Claims Administration ¶ 6, *Steinfeld v. Discover Fin. Servs.*, No. 12-01118 JSW (N.D. Cal. Mar. 10, 2014), ECF No. 96.

[3] Joint Mot. Preliminary Approval Class Action Settlement; Mem. P&A Supp. Thereof at 11:19-22, *Adams v. AllianceOne Receivables Mgmt., Inc.*, Case 3:08-cv-00248-JAH-WVG (S.D. Cal. Feb. 24, 2012), ECF No. 109.

10

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

liability. Class Counsel moreover retained an expert witness who identified the alleged violations, class member by class member. Armed with her expert analysis, 60,000 pages of written documents and calling records and over 300 pages of deposition transcripts, Plaintiff filed his motion for class certification, supported by 4 declarations and 18 exhibits. This considerable progress in discovery reduces any doubts that Plaintiff may be leaving value on the table by having failed to look under enough rocks. The current discovery posture of the case therefore supports approval.

      6.    <u>The presence of a government participant.</u>

While no governmental entity is a party to this litigation, notice has been issued to 55 governmental officials in compliance with the Class Action Fairness Act. Azari Decl. ¶ 11. No governmental entity has raised objections or concerns about the settlement.

      7.    <u>The experience of counsel supports final approval</u>

In considering a class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc., No. 08-01520 SC*, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also* Perkins v. LinkedIn Corp., No. 13-CV-04303-LHK, 2016 U.S. Dist. LEXIS 18649, at *8 (N.D. Cal. Feb. 16, 2016), at *3 (N.D. Cal. 2016) ("[T]he views of Plaintiffs' counsel, who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval."). Class Counsel have extensive experience litigating TCPA class actions, consumer class actions, and other complex matters. Dkt. No. 92-2 ¶ 9; Dkt. No. 92-3 ¶¶ 12-14; Dkt. No. 92-4 ¶ 4; Dkt. No. 92-5 ¶ 10; Dkt. No. 92-6 ¶ 5.  They are well positioned to evaluate the settlement, having engaged in sufficient discovery and expert analysis to evaluate the strengths and weaknesses of Plaintiff's case. Class Counsel support the settlement as fair, reasonable and adequate. Dkt. No. 92-2 ¶ 12; Dkt. No. 92-3 ¶ 15; Dkt. No. 92-4 ¶ 6; Dkt. No. 92-5 ¶ 13; No. 92-6 ¶ 17.

      8.    <u>Class members' reaction supports final approval</u>

A positive response to a settlement—as evidenced by a small percentage of opt-outs and objections—supports final approval. *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543-44 (W.D. Wash. 2009).  "[T]he absence of a large number of objections to a proposed class action

11

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 U.S. Dist. LEXIS 55014, at *22 (N.D. Cal. Apr. 25, 2016); *accord Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171 FMO (FFMx), 2017 U.S. Dist. LEXIS 77576, at *24 (C.D. Cal. May 21, 2017). Of 51,035 identified Settlement Class members —most of whom received direct notice of the settlement—only 28 (0.0005%) chose to opt out and *none* objected. Azari Decl. ¶¶ 24-25. This response is overwhelmingly positive, especially in light of the 4,424 unique and complete claims filed, and it supports final approval of the settlement. *See, e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of class settlement with 45 objections and 500 opt-outs for a class of approximately 90,000 notified class members).

At least 4,424 class members filed claims, or approximately 9% of the class. Azari Decl. ¶ 25. This is an unusually high claim rate for a TCPA case. It far exceeds the claim rates faced by courts that have approved settlements. *E.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 941, 944-45 (affirming approval of class action settlement with 3.4% claim rate); *Poertner v. Gillette Co.*, 618 F. App'x 624, 625-26, 630-31 (11th Cir. 2015) (affirming approval of class action settlement with 0.7% claim rate); *Moore v. Verizon Commc'ns., Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, at *29-30 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claim rate); *Touhey v. United States*, No. EDCV 08-01418-VAP (RCx), 2011 U.S. Dist. LEXIS 81308, at *12-14 (C.D. Cal. July 25, 2011) (approving class action settlement with 2% claim rate); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377, 1384 (S.D. Fla. 2007) (approving class action settlement with 1.2% claim rate). "[A] claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness." *Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) (collecting cases). Even those class members who chose not to file a claim received a legal benefit from the opportunity to do so. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

12

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

**B.      The settlement is the product of arm's-length negotiations.**

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992). When a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 13:45; *In re High-Tech Emp. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530, at *6-7 (N.D. Cal. Oct. 30, 2013). This settlement is the product of arm's-length negotiations between the parties and their counsel, who are highly experienced in litigating these types of cases, and was negotiated with the assistance of an experienced and well-respected mediator. "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 U.S. Dist. LEXIS 53317, at *19 (N.D. Cal. Apr. 6, 2017).

**C.      The notice program complied with Rule 23 and due process.**

The class notice program approved by the Court and implemented by Epiq satisfied the requirements of Rule 23 and due process. "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). When the class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court approved the postcard notice in granting preliminary approval of the settlement. Dkt. No. 102 at 5; Dkt. No. 92-1 § 7.2(a). The notice was "'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" and described "'the action and the plaintiffs' rights in it.'" *Hawthorne v. Umpqua Bank, No. 11-cv-06700-JST*, 2014 U.S. Dist. LEXIS

13

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1  129713, at *17 (N.D. Cal. Sep. 15, 2014) (quoting *Philips Petroleum Co. v. Shutts*, 472 U.S. 797,

2  812 (1985)). The notice was written in plain English, size 12 font, and included the objection

3  deadline and final approval hearing date. Dkt. No. 101-1 at 21-22. It sufficed. *See Chavez v. PVH*

4  *Corp.*, No. 13-CV-01797-LHK, 2015 U.S. Dist. LEXIS 17511, at *19-20 (N.D. Cal. Feb. 11,

5  2015) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient

6  detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

7  (internal quotation marks omitted)).

8       Epiq mailed the Court-approved postcard notice by first-class mail to 51,035 class

9  members. Azari Decl. ¶ 15. Plaintiff acquired in discovery the associated names and addresses

10  for 41,316 of the class members, and Epiq performed reverse look-ups on the remaining

11  numbers. *Id.* at ¶ 13. There were only 8,559 postcard notices returned as undeliverable for which

12  Epiq couldn't get a more current address. *Id.* at ¶ 18. Epiq estimates that the notice program

13  reached approximately 83% of class members. *Id.*

14       Epiq established a settlement website with detailed information about the settlement. *Id.*

15  at ¶ 19. The website address was printed on all notices. *Id.* Located at www.

16  TotalTCPASettlement.com, the website had 9,170 unique visitors. *Id.* at ¶ 20. The website lists

17  important dates and class members' rights and options, included frequently asked questions and

18  key documents from the case such as the settlement agreement and the motion for attorneys'

19  fees, and allowed class members to submit a claim online. *See id.* at ¶¶ 19-21. The long-form

20  notice was posted on the website and mailed to any class member who requested it. *Id.* at ¶ 16.

21  The website (and notice) also provided a toll-free number that class members could call to reach

22  a 24-hour automated phone system with recorded answers to frequently asked questions. *Id.* ¶ 22.

23  The toll-free number received 1,269 calls. *Id.* Class members were also able to call Class

24  Counsel with any questions they had about the settlement.

25       In short, the notice program was thorough and allowed class members to obtain relevant

26  information however they preferred.

27

28

**D.     The Class should be finally certified for settlement purposes.**

In its Preliminary Approval Order, the Court provisionally certified the following class for settlement purposes:

> All persons within the United States to whom Quality Merchant Services, Inc., Michael Alimento, and/or Brian Alimento made a telephone call using the Spitfire dialing software and/or system to any telephone number assigned to a cellular telephone service for the purpose of promoting Defendant's goods or services from July 5, 2013 through June 8, 2018. These individuals are identified on the Class List. Excluded from the Settlement Class are the following: (i) any trial judge who may preside over this Action; (ii) Defendant; (iii) any of the Released Parties; (iv) Class Counsel and their employees; (v) the immediate family of any of the foregoing Persons; (vi) any member of the Settlement Class who has timely submitted a Request for Exclusion by the Objection/Exclusion Deadline; and (vii) any Person who has previously given a valid release of the claims asserted in the Action.

Dkt. No. 102 at 2. Plaintiff demonstrated in his motion for preliminary approval that the Rule 23 requirements are satisfied. Dkt. No. 92 at 18-21. In short:

- Numerosity is satisfied because the Class includes more than 50,000 people. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (40 class members generally deemed numerous).

- Commonality is satisfied because the central questions in this case—whether Total Merchant is vicariously liable for calls made by Quality and whether the calls violated the TCPA—turn on common evidence and can be resolved for all class members at one time. *See, e.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014).

- Typicality is satisfied because Plaintiff's claims arise from the same course of alleged automated telemarketing by Quality for Total Merchant and are based on the same legal theories. *See Whitaker v. Bennett Law, PLLC*, No. 13-cv-3145-L(NLS), 2014 U.S. Dist. LEXIS 152099, at *13 (S.D. Cal. Oct. 27, 2014).

- Adequacy is satisfied because Plaintiff has no conflicts of interest with other class members, has demonstrated its commitment to the class, and is represented by counsel

15

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

who are experienced in litigating class action cases and TCPA claims in particular. Moreover, the proof is in the pudding.

- Predominance is satisfied because the overarching common question of whether Total Merchant is vicariously liable for the calls placed by Quality can be resolved using the same evidence for all class members. This is exactly the kind of predominant common issue that makes (b)(3) certification appropriate. The other elements of Plaintiff's claims can also be proven with common evidence, including whether Quality used an automatic telephone dialing system or a pre-recorded message to place calls to cell phones, and whether Total Merchant or Quality acted willfully.

- Superiority is satisfied because classwide resolution is the only practical method of addressing the alleged violations of the rights of the tens of thousands of class members with modest individual claims. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

**E.     Class Counsel's request for an award of attorneys' fees should be granted.**

Class Counsel filed a motion for an award of attorneys' fees and costs on December 13, 2018. Dkt. No. 103. Class Counsel requested a fee at the Ninth Circuit's benchmark rate of 25% of the settlement fund, or $1,875,000, plus reimbursement of $20,591.19 in litigation costs. *Id.* at 2. The motion requested a $10,000 service award for Plaintiff. *Id.* For the reasons discussed therein, the request for attorneys' fees and a service payment should be granted. The extraordinarily positive reaction of class members, including a 9% claim rate, 0.006% opt-out rate, and total absence of objections, confirms the excellent result achieved by Plaintiff and his counsel.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the settlement class and approve the settlement as fair, reasonable and adequate. A proposed final approval order is filed herewith as Exhibit 2.

16

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW

1     RESPECTFULLY SUBMITTED AND DATED on February 12, 19.

2                                    By: *Anthony I. Paronich*

3
                                     Anthony I. Paronich, *Admitted Pro Hac Vice*
4                                    anthony@broderick-law.com
                                     Edward A. Broderick, *Admitted Pro Hac Vice*
5                                    BRODERICK & PARONICH, P.C.
                                     99 High Street, Suite 304
6                                    Boston, Massachusetts 02110
                                     Telephone: (617) 738-7080
7                                    Facsimile:  (617) 830-0327
8
                                     Matthew P. McCue, *Admitted Pro Hac Vice*
9                                    mmccue@massattorneys.net
                                     THE LAW OFFICE OF MATTHEW P. McCUE
10                                   1 South Avenue, Suite 3
                                     Natick, Massachusetts 01760
11                                   Telephone: (508) 655-1415
                                     Facsimile:  (508) 319-3077
12
13                                   Andrew W. Heidarpour, *Admitted Pro Hac Vice*
                                     AHeidarpour@HLFirm.com
14                                   HEIDARPOUR LAW FIRM, PPC
                                     1300 Pennsylvania Ave. NW, 190-318
15                                   Washington, DC 20004
                                     Telephone: (202) 234-2727
16
17                                   *Attorneys for Plaintiff Sidney Naiman and the*
                                     *Settlement Class*
18

19

20

21

22

23

24

25

26

27

28

PL.'S NOTICE MOT. AND MOT. FINAL APPROVAL CLASS ACTION SETTLEMENT; MEM. P&A
*Naiman v. Total Merchant Servs., Inc.*, Case No. 4:17-cv-03806-CW